## BOWDOINHAM *vs.* RICHMOND.

The legislature having, in the act dividing the town of *Bowdoinham* and incorporating a part of it into a new town by the name of *Richmond*, enacted that the latter town should be holden to pay its proportion towards the support of all paupers then on expense in *Bowdoinham ;* which it did for two years ; after which, on the petition of *Richmond*, another act was passed, exonerating this town from such liability in future ; it was held that the latter act was unconstitutional and void, as it impaired the obligation of the contract created by the original act of division and incorporation.

THIS case was *assumpsit*, brought to recover five thirteenth parts of the expense of supporting certain paupers, under the special provisions of the private *Stat.* 1823, *ch.* 214, *sec.* 5 ; and it came before the court upon a case stated by the parties, the material facts of

which are sufficiently apparent in the opinion of the Court, which was read at the ensuing *September* term, as drawn up by

MELLEN C. J. On the 10th of *February*, 1823, when the town of *Bowdoinham* was divided, and the northerly part of it erected into a town by the name of *Richmond*, all the paupers, sixteen in number, which were then chargeable as such to *Bowdoinham*, lived in that part of the original town which is now *Bowdoinham* ; except one ; and she lived in that part of the original town which is now *Richmond*. The act of incorporation, in the 5th section, declares " that the said town of *Richmond* shall be held to support their proportion of all paupers now supported in whole or in part by *Bowdoinham*." And after giving certain rights to each town, the section is concluded in these words, " and if either town shall neglect or refuse to comply with the provisions of this act, the other town may have an action on the case against such delinquent town, to recover what " in equity and good conscience may be due to it." Upon the petition of the town of *Richmond*, the legislature, on the 15th of *February*, 1825, passed another act, declaring " that from and after the first day of *May* next, the town of *Richmond* shall not be holden to support or contribute to the support of any pauper who resided within the limits of the town of *Bowdoinham* on the 10th day of *February*, 1823, but shall be holden to support all paupers who resided on that day within the limits of the town of *Richmond*." On the presentment of the petition by *Richmond* for this second act, the usual notice was ordered, and given ; but no notice was taken of it by *Bowdoinham*, or any of its officers.

The question is whether *Bowdoinham* is bound by this second act, to the passage of which they never gave any express or implied assent. It is admitted that the legislature has power to incorporate towns, of such dimensions and form, and by such boundaries as they may judge proper, and alter such boundaries at their pleasure ; and that they may, by annexing a part of one town to an adjoining town, materially change the amount and value of taxable property, as well as the number of inhabitants, by enlarging one town and diminishing the other. As we had occasion to observe in *North Yarmouth*

*v. Cumberland*, [*ante p.* 29,] it is matter of notoriety that when towns are divided, it is done on petition, and after an order of notice ; the object of which notice is that the town may be heard, and, if divided, that its interests may be guarded by such provisions in the act, as circumstances may render just and proper; and these are generally matters of arrangement by those immediately to be affected. In such a manner, according to the common course of business, the provisions of the act incorporating *Richmond*, without any question, were prepared. Having been made a part of the act of incorporation, and *Richmond* having complied with the terms of the act, and for two years paid to *Bowdoinham* the proportion of pauper expense due to them according to the above terms, we must consider the arrangements and provisions beforementioned in the nature of a contract, whereby *Bowdoinham* had acquired a vested right to the settled proportion of the expense of supporting the paupers living in *Bowdoinham* at the time the act of incorporation was passed, and a vested right of action to recover such proportion. The act of *Feb.* 15, 1825, professes to absolve the town of *Richmond* from the payment of a large part of the proportion of expense which they were bound by the first act to pay to *Bowdoinham*. Had the legislature a constitutional right to pass the latter act, in its very terms impairing the obligation of the contract on the part of *Richmond*, created by the first act ? If it does impair the obligation of a contract, then according to the express language of the constitution of the United States and of this State, the legislature transcended their powers in enacting it, and this court is bound to declare it void ; for they are bound to support those constitutions. No law ought to be pronounced unconstitutional and void, unless it appears clearly to be so ; but when such is the fact, our duty is plain. It is not however to be supposed that such laws are ever enacted, with a belief or apprehension of their unconstitutionality at the time.

The cases cited by the counsel for the plaintiff seem to establish the principle on which he relies. In *Brunswick v. Litchfield*, 2 *Greenl.* 28, and in *Hampshire v. Franklin*, 16 *Mass.* 88, cited by the defendant's counsel, it is distinctly declared that no act or resolve

of the legislature can of itself create a debt from one corporation or person to another, but only by the consent, express or implied, of the party to be charged. We think no such assent can be implied from the silence of *Bowdoinham*, in respect to the petition for the passage of the second act. The town probably considered that the legislature had no authority to pass such a law, and chose to leave the question of constitutionality, should it become necessary, to judicial decision. The counsel for the defendants has placed the defence of the cause upon the power of the legislature as to the incorporation of towns and change of boundaries, and annexation of particular persons or estates to one town, formerly belonging to another. It is contended that by the exercise of this acknowledged power, the legislature may increase the expenses and taxes of the inhabitants of one town, and in the same degree diminish those of the inhabitants of another town, by increasing its population and property ; and that what may be done lawfully in an indirect manner, may be lawfully done in a direct one. We do not perceive the merits of this argument. It does not meet the objection urged by the plaintiff's counsel. It is true that a change of boundaries, or transfer of individuals from one town to another, with their property, may produce the effects stated ; but increasing the taxes on the individuals of a town, reduced in numbers and property in the manner mentioned, has no effect whatever upon the contracts of the corporation, and the obligations imposed by those contracts. The claim of one town on another town, is not in any degree impaired by such changes as to boundaries or property or inhabitants. The burdens of the diminished town may be increased on the inhabitants, but a creditor of the town suffers nothing by this circumstance. The latter act, if enforced, would benefit the town of *Richmond*, by relieving them from the payment of a part of the debt they owe to *Bowdoinham* ; and would injure that town by divesting them of a part of their property and the right to recover its value. Legitimate legislation cannot produce such effects as these. We therefore, though unwillingly, must pronounce the act of the 15th of *February*, 1825, as repugnant to the constitu-

tion of the United States and of this State, for the reasons assigned in this opinion. According to the agreement of the parties, the defendants must be defaulted.

*Greenleaf* and *Jewett* for the plaintiffs.

*Allen* for the defendants.