THE WILLIMANTIC SCHOOL SOCIETY *against* THE FIRST
SCHOOL SOCIETY IN WINDHAM.

In 1836, the school society of *A* was divided by the legislature, and a new socie-
ty named *B*, was formed therefrom. At this time, the society of *A* held cer-
tain funds for the use of the schools therein, being the avails of public lands
in the *Western* part of this state and certain moneys derived from excise,
appropriated for the use of schools, by acts of the General Assembly, passed
in 1733 and 1774; but in the act making the division, there was no provision
for dividing these funds. In 1839, the General Assembly, on the petition of
the society of *B* against the society of *A*, passed a resolution, directing a
division of such funds between the two societies in proportion to the number
of school children within their respective limits. In the preamble of this res-
olution it was stated, among other things, that the avails of the *Western* lands
were appropriated, by "an Act of the General Court passed in 1732;" but there

*Windham,*
July, 1841.

The Willimantic School Society
*v.*
The First School Society in Windham.

was no act of 1732 on that subject.   On a bill in chancery, brought by the society of *B* against the society of *A*, for a division of the funds pursuant to the resolution of 1839, it was held, 1. that judicial notice might be taken of the act of 1733, to shew from what sources the funds were derived; 2. that the acts of 1733 and 1774 making the appropriation, were properly noticed by the court, as part of the evidence to prove that the funds in the hands of the defendants, were derived from the sources alleged; 3. that though it appeared, that receipts for the moneys appropriated for the use of schools were given by the several towns and societies in the colony, and lodged in the secretary's office, yet it was not incumbent on the plaintiffs to produce them, or prove their loss; 4. that the resolution of 1839, providing for a division of the funds between the societies, was not invalid as infringing the vested rights of the defendants, the appropriation having been made originally for the benefit of the schools, and not for the benefit of the corporations then embracing them.

THIS was a bill in chancery, for a proportion of the school money in the hands of the defendants.    The following are the material facts, alleged in the bill, and found by the court.

In *May*, 1836, the General Assembly of this state passed an act constituting the inhabitants living in the seventh, eighth and thirteenth school districts, in the town of *Windham*, a new school society in that town, by the name of *The Willimantic School Society*, with the usual powers and privileges given to such societies.  At the time of this division, the original society held certain funds in notes payable to their treasurer, or to the society, for the use and benefit of the schools therein, which are as much the property of the plaintiffs as of the several districts composing the first school society, as now constituted, being the avails of certain lands, sold by the state, and certain moneys derived from excise, both of which were heretofore, by the General Assembly, appropriated to the use of the public schools.   In the division of the society, however, no provision was made for dividing these funds; and in *May*, 1839, the plaintiffs preferred a petition against the defendants to the General Assembly, and after a full hearing of the parties, the following resolution was passed : " Whereas, upon hearing the petition of *The Willimantic School Society* against *The First School Society of Windham*, on file, dated *April* 23rd, 1839, it appears to this Assembly, that by virtue of the provisions of an act of the General Court passed in 1732, dividing the amount arising from the sale of certain townships laid out in lands in the *Western* part of this state, for the use of public schools, and an act passed in 1774,

appropriating the excise money for the same purpose, the town of *Windham* became possessed of, and entitled to, a sum of money appropriated to that purpose ; that on the organization of school societies by law, the money thus received, came into the possession of the school society of *Windham ;* and when said school society was divided, by forming *The Scotland School Society*, the portion of the money belonging to the first school society, continued, by that society, to be appropriated for the same purpose, and to be divided among the districts, upon the principle of dividing the money derived from the school fund, until the year 1836, when the resolution was passed, establishing *The Willimantic School Society ;* that although in that resolution no provision was made for the division of the money or the evidences of debt as aforesaid, yet that said money, after said division, was no more the property of the districts composing said first school society than of those then comprising the said *Willimantic School Society,* although in the possession of the treasurer of the first school society ; and that said *Willimantic School Society* is entitled to their proportion of said funds, to be divided upon the principle previously adopted : therefore,

" *Resolved,* That the treasurer of *The First School Society of Windham*, or other person having charge of said money or evidences of debt, shall, if in the form of money, pay over to the treasurer of said *Willimantic School Society* such proportion of said money, as the number of children between the ages of four and sixteen, in the several districts of the said *Willimantic School Society,* bears to the whole number of children in both societies, according to the last enumeration ; and provided said treasurer shall, for the space of sixty days after the rising of this Assembly, fail to pay over such money, or if the treasurers of said school societies cannot agree, which they are hereby authorized to do, how the division of the evidences of debt shall be made between the societies, the judge of the county court for said county, shall receive from the treasurer of said *First School Society,* or the person holding the same, all the money or evidences of debt as aforesaid, which they are hereby required to deliver over to said judge ; and the said judge shall divide and deliver over to the parties the said money or evidences of debt, upon the principle of distribution as aforesaid."

*Windham, .
July, 1841.*

The Willimantic School Society
*v.*
The First School Society in Windham.

*Windham,*
*July, 1841.*

*The Willimantic School Society*
*v.*
*The First School Society in Windham.*

According to the enumeration of children within said two societies, on the first *Monday* of *August,* 1838, legally made, there were in the districts constituting *The Willimantic School Society,* 343 children, between the ages of four and sixteen years, and in the other districts constituting *The First School Society in Windham,* there were 431 such children. The funds of the society so to be divided, consisted of the promissory notes of sundry individuals, bearing interest. On the 15th of *August,* 1839, more than sixty days after the rising of the General Assembly of that year, said *First School Society,* not having paid over or delivered to the *Willimantic School Society,* or their treasurer, any of said notes or securities, nor any part of said fund, the plaintiffs, by their treasurer, demanded of said *First School Society* a share or proportion of said fund, and requested of them to divide the same according to said resolution ; but said *First School Society* would not divide said fund with the plaintiffs, nor pay over to them, or their treasurer, any sum of money, or any of said securities. The plaintiffs, thereupon, presented their memorial to the Hon. *Joseph Eaton,* judge of said county court, setting forth the aforesaid facts, and praying him to make the division according to said resolution. He appointed a time and place for hearing the parties on this matter, and cited the defendants to appear ; but they refused and neglected so to do ; and they still hold the whole of said fund, and refuse to make any division thereof.

At the hearing of the cause, upon the bill and answer, at *Brooklyn, January* term, 1841, the court found the facts above stated, and thereupon decreed, that the defendants, on or before the 3d *Monday* in *August,* 1841, pay over to the plaintiffs, such share and proportion of all said funds, as 343, the number of scholars in said *Willimantic School Society,* is to 774, the number of scholars in both societies, together with the plaintiffs' costs ; and in case the defendants should refuse or neglect to pay the plaintiffs, within the time specified, such share and proportion of said funds, they should forfeit and pay to the plaintiffs the sum of 500 dollars.

On the hearing, the plaintiffs produced the resolution of the General Assembly of 1839 ; and to show the manner in which the funds now holden by the defendants, had been derived,

they referred to the several acts passed by the legislature of this state relating to schools, particularly the acts of 1733 (*a*)

<div align="right">

*Windham,*
July, 1841.

The Willimantic School Society.
(*a*)
*v.*
The First School Society in Windham.

</div>

(*a*) The act here referred to, passed in *May*, 1733, is as follows :

" An Act for the Encouragement and better Supporting the Schools that by law ought to be kept in the several Towns and Parishes in this Colony.

*Be it enacted, &c.*, That the seven towns lately laid out in the *Western Lands*, (as commonly called) shall be disposed of and settled according to such time and regulations as this Assembly shall order, and that the money that shall be given by such as may be allowed to settle in said towns for the land there, shall be improved for the support of the aforesaid schools, *viz.* those schools that ought to be kept in those towns that are now settled, and that did make and compute lists of their polls and rateable estate in the year last past, and such towns shall receive said money, every town according to the proportion of said list, and each parish to receive in proportion according to their own list given in as aforesaid the last year; all which money shall be let out, and the interest thereof improved for the support of the respective schools aforesaid for ever, and to no other use ; and the committee of each parish or town (where there is but one parish) shall receive the proportion of money arising as aforesaid, and give a receipt (which receipt shall be delivered to the secretary and kept in his office) that they have received such a sum of money to be let out and improved for the support of a school in such town or parish, where they are a committee as aforesaid : and that if, at any time, the said money or interest thereof, shall be by order of such town or parish, or the committee chosen by them, put to or employed for any other use than for the support of a school there, that then such sum of money shall be returned into the treasury of the colony, and the treasurer of the colony shall, upon refusal thereof, recover the same sum of such town or parish for the use of the colony : and such town or parish that have mis-improved such money, shall forever lose the benefit thereof." *Stat.* 408. *c.* 106. ed. 1718. with additional acts.

The following provisions constitute a part of the act under the title of " *Schools* " in the statutes revised and printed in 1750 :

" An Act for Appointing, Encouraging and Supporting Schools.

*Be it enacted, &c.*, That every town within this colony, wherein there is but one ecclesiastical society, and wherein there are seventy house-holders, or families, or upwards; and every ecclesiastical society constituted, or that shall be constituted, by the General Assembly of this colony, wherein there are the number of seventy house-holders, or families, or upwards, shall be at least eleven months in each year constantly provided with, and shall keep and maintain one good and sufficient school, for the teaching and instructing of youth and children to read and write ; which school shall be steadily supplied with, and kept by, a master sufficiently and suitably qualified for that service.

And every such town and society, wherein there is not the said number of seventy house-holders, or families, shall be provided with and maintain a school, and a school-master, as aforesaid, for the purpose aforesaid, at least one half of the year, annually.

And also there shall be a grammar school set up, kept, and constantly maintained in every head or county town of the several counties that are, or shall be made in this colony ; which shall be steadily kept, by some discreet person of good conversation, and well skilled in, and acquainted with the learned languages; especially greek and latin.

And every such town and society are hereby impowered to appoint committees for such schools respectively, to take care and see the same kept accordingly.

*And for the encouragement and maintenance of such schools and school-masters,*

*Be it further enacted by the authority aforesaid,* That the treasurer of this colony shall annually deliver the sum of *forty shillings* upon every *thousand pounds* in the lists of the respective towns in this colony, and proportionably for lesser sums, out of the rate of each town, as the same shall be brought into the public treasury, by the several constables, in such money, or bills of public credit, as the rate shall be paid in ; out of which the same is to be taken, unto the school committees ; or for want of such committees, to the selectmen of said towns respectively ; to be by them distributed to the several parishes or

*Windham,*
*July, 1841.*

*The Williman-*
*tic School So-*
*ciety*
*v.*
*The First*
*School Society*
*in Windham.*

and 1774, (*b*) but did not produce the receipts required to be given by those acts, nor any evidence that they were lost or destroyed.    Nor did the defendants give any evidence to show in what manner their funds had been derived ; but they claimed, 1st, that the act of 1733 could not be received as evidence to show in what manner those funds had been derived, because it was not the act referred to in the resolution of 1839 ; 2nd, that the plaintiffs must show, by some act passed in the year 1732, that a grant had been made, under which the

societies in each town for the benefit of their respective schools, in proportion to the lists in said parish or society.

*Provided,* the said school committees or selectmen shall deliver their certificates that there hath been a school kept in each of the towns and societies they desire to take the money for out of the treasury, in the year past, according to this act.

*And whereas the several towns, and societies in this colony, which made and computed lists of their polls, and rateable estate, in the year of our Lord, one thousand, seven hundred, and thirty-two, by virtue of an act of this Court, made in May, in the year of our Lord, one thousand seven hundred, and thirty three, received by their committees, respectively, for that purpose appointed, considerable moneys, or bills of public credit, raised by the sale of certain townships, laid out in the Western Lands, then so called, ( for which receipts were given, and lodged in the secretary's office) to be let out, and the interest thereof improved for the support of the respective schools aforesaid, forever, and to no other use.*

*Be it therefore further enacted by the authority aforesaid,* That if at any time after the receipt of said money ; or if at any time hereafter, the said money, or interest thereof, hath been, or shall be, by order of such town, or society, or the committees chosen by them, put to, or employed for any other use than for the support of a school as aforesaid therein, such sum of money received as aforesaid, shall be returned into the treasury of the colony ; and the treasurer of the colony, upon refusal thereof, shall recover the same sum of such town or society, for the use of the colony.

And such town or society that mis-improves such money, shall forever lose the benefit thereof."    Pp. 212, 213.

By the same act, it was further provided, that the select-men should inspect the schools, at least once a quarter, and enquire into the qualifications of the masters and the proficiency of the children ; and if they should observe any such disorders or misapplication of public money allowed for the support of schools as would be likely to defeat the good ends proposed, they were required to lay the same before the General Assembly, that proper orders therein might be given.    *Stat.* 213, 14. ed. 1750.

By the statute under the same title in the edition of 1808, it appears, that before that time, [in 1798 and 1799] it had been provided, that all public moneys for the support of schools, received by the committee, should be divided among the several districts which had kept their schools according to law, in proportion to their respective lists.    *Stat.* 584, 5. ed. 1808, *s.* 8.    This principle has ever since been pursued.

(*b*)  In *May*, 1766, the General Assembly passed an act, entitled " An Act for recovering in the Excise Money, and appropriating the same for the benefit of Schools," by which the select-men in the several towns were authorized to recover the moneys due for excise on liquors, tea, &c., and were directed to pay them over to the several committees in the towns where they were recovered, appointed to receive the money granted by the colony for the encouragement of schools ; the *interest* thereof to be applied for the support of such schools forever, and for no other use.    *Stat.* 325. ed. 1769., with additional acts.

In *May*, 1774, an act in addition to the one above referred to, was passed, by which it was enacted, " That the treasurer of this colony pay out to the several towns the *principal* sums paid in by them as excise money, together with the *interest* due at the time of payment, taking a receipt therefor, which moneys shall be appropriated to the use of schools, as in said act is provided."    *Id.* 405.

defendants received the funds in question ; 3rd, that the plain-
tiffs were bound to produce the receipts, or a copy of them,
or prove their loss or destruction, as the best and only legal
evidence that the defendants had received these moneys ; 4th,
that the acts referred to did not tend to show, that the notes
now held by the defendants were for moneys received from
the sale of the *Western* lands and excise ; 5th, that if the
defendants held those funds, the resolution of 1839, under
which the plaintiffs claimed them, was unconstitutional and
void, on the ground that the funds, if granted at all to the
defendants, were granted to them in their corporate capacity,
for the use of the schools within the present limits of the first
school society, and not for the use of the schools within the
limits of the society, as it was before its division.

These claims of the defendants being overruled, and a de-
cree passed against them, as above stated, they moved for a
new trial.

*Hovey,* in support of the motion, contended, 1. That the
act of 1733, relative to the support of schools, did not tend to
support the averments in the plaintiffs' bill, nor to prove the
facts set forth in the preamble of the resolution of 1839, and
ought not to have been judicially noticed by the court. The
resolution recites, that by virtue of the provisions of an act
passed in 1732, the town of *Windham* became possessed,
&c. The plaintiffs have grounded their bill upon this resolu-
tion ; but instead of producing an act passed in 1732 in sup-
port of their claims, they produced a different one—an act
passed in 1733. The variance thus occasioned is fatal. *Rann*
v. *Green, Cowp.* 474. *Langley* v. *Haynes, Moore,* 302. 2
*Hawk. P. C.* 246. *Plowd.* 79. 84. 1 *Chitt. Pl.* 356. *Bac.
Abr. tit.* Statute, L. 5.

2. That the evidence offered by the plaintiffs did not tend
to prove, that the notes described in the bill were holden, by
the defendants, on account of money granted by the state.
Evidence to establish this fact was indispensable : without it,
the court had no power to decree a partition of the fund. It
was incumbent on the plaintiffs to raise a presumption at least,
that the securities in question were holden for moneys receiv-
ed from the state for the purposes mentioned in the act referred
to in the bill.

Windham,
July, 1841.
───────
The Williman-
tic School So-
ciety.
v.
The First
School Society
in Windham.

3. That authenticated copies of the receipts mentioned in the statutes making the grants, should have been produced. They were the best evidence.    1 *Stark. Ev.* 440.

4. That the legislature had no right to order a division of the funds, against the consent of the defendants: the resolution is, therefore, inoperative and void.   The funds were granted to *The First School Society of Windham*, in their corporate capacity, for the benefit of all persons living within the limits thereof, however those limits might from time to time be changed ; or they were granted for the common benefit of the whole town.   In either case, a division of them between several corporations would alter the terms of the grant, and impair the rights of a portion of the grantees acquired in virtue of it.   The power to do this has not been reserved by the legislature, and could not therefore be exercised.  *Fletcher* v. *Peck*, 6 *Cranch*, 87. 136.  *Atwater* v. *Woodbridge*, 6 *Conn. Rep.* 223.  *Osborne* v. *Humphrey*, 7 *Conn. Rep.* 535.  *Dartmouth College* v. *Woodward*, 4 *Wheat.* 518.

5. That when part of the inhabitants of a town are constituted a new society, the remaining inhabitants are by law considered as *the same corporation*, and have the right to retain the funds granted to the town for the use of schools. This principle, so far as it applies to ecclesiastical purposes, was settled in the cases of *Huntington* & al. v. *Carpenter*, *Kirby*, 45. and *Sedgwick* & al. v. *Pierce*, 2 *Root*, 431.

*Strong* and *Welch*, contra, contended, 1.   That the plaintiffs were not entitled to a new trial, on the ground of a *variance*.   In the first place, the act of 1733 was not a matter of evidence at all, but a public statute, which the court was bound to regard without proof.   Secondly, the mistake in the preamble or recital of the resolution of 1839, did not preclude the court from looking at the act of 1733, or any other public act.   Thirdly, such mistake did not nullify the body of the resolution, or in any way affect its provisions.   Nor did it, fourthly, produce any discrepancy between the allegations in the plaintiffs' bill and the act of 1733.   This act was just as conformable to the statement regarding it in the bill, as though it had been correctly referred to in the resolution.   Fifthly, if the mistake had been in the act of 1733, *i. e.* if it had appear-

ed on its face to have been passed in 1732, instead of 1733; and if, moreover, it had been a matter of evidence, instead of a public statute; still the time of its enactment would not have been material, and consequently, the variance would not have been fatal.

2. That the evidence to prove that the notes were held for the purposes specified in the bill, was admissible and proper. The objection goes rather to the *weight* of the evidence than its competency. It is enough here that it satisfied the triers.

3. That the omission of the plaintiffs to produce the receipts, did not preclude them from shewing, by other evidence, whence the funds in question were derived. In the first place, those receipts were not in the plaintiffs' *possession;* and, on that ground, they were not bound to produce them. But, secondly, if they had been, they would not be the only evidence. A receipt is not of a higher nature than parol proof, nor is it necessary to account for its absence. *Southwick* v. *Hayden,* 7 *Cowen,* 334. 3 *Stark. Ev.* 1276.

4. That the resolution of 1839 is a valid act of the legislature. Here was a common fund for the benefit of *all* the children; as well those in the districts composing the new society, as those now constituting the first society. The provision for a division was therefore carrying out the design of the original appropriation. It was necessary to give full effect to the grant.

5. That a division not having been made, in the mode pointed out, by the resolution of 1839—and this through the default of the defendants—it is incident to the power of a court of equity to decree a partition. The plaintiffs can go no where else for relief, being without remedy at law.

WILLIAMS, Ch. J. Upon the facts stated in the motion, in connexion with the laws referred to therein, and the constitution of the state, several objections are made to the decree of the superior court; some of which, not having been made in that court, require no notice here, although we see nothing to change the result, so far as they have been considered.

1. The first objection made by the defendants, is, that the act of 1733, should not have been admitted in evidence, as the act referred to in the resolve of the General Assembly is a statute of 1732; and it is therefore claimed, that the act of

*Windham,*
*July, 1841.*

The Willimantic School Society
*v.*
The First School Society in Windham.

*Windham,*
July, 1841,

The Willimantic School Society
*v.*
The First School Society in Windham.

1733 could not have been the act referred to; and a number of cases have been cited to show, that where, in a declaration or plea, a statute is mis-recited, either as to the time of its enactment or in other respects, it is a fatal variance. While those cases are admitted to be good law, their application to this case is not admitted.

It is not claimed, that in this bill, the act is mis-recited. The date of the statute, under which the plaintiffs found their claim for these moneys, is not given; but it is averred in the bill, that they are the avails of lands sold under authority of the state, and excise money appropriated for the use of public schools. But the precise claim of the defendants, is, that in the act of 1839, under which the plaintiffs claim, the act of appropriation is described as passed in 1732, and the act exhibited was in fact passed in 1733. If the technical learning applicable to pleading, were to be adopted in this case, this objection would be fatal. But there is a wide difference between the construction to be given to a legislative act and a special plea. The one is the act of a party, who, if he suffers, suffers for his own fault; and upon notice, he may, under the rules of court, ordinarily rectify his mistake, by amendment. The other is an act of a body over whose proceedings the party suffering has no controul, and which no rule of court can amend. In the one case, a mistake in a date or in amount, in description, is fatal: in the other, the court may, as in cases of contract, look at the whole instrument to discover the real meaning; and such construction is to be given, as will give effect to the intention of the parties, if the words they employ will admit of it, *ut res magis valeat, quam pereat. Jackson* d. *Rogers* & al. v. *Clark* & al. 7 *Johns. Rep.* 217, 224. "If," says *Parsons*, Ch. J. "the description be sufficient to ascertain the estate intended to be conveyed, although the estate will not agree to some of the particulars in the description, yet it shall pass by the conveyance, that the intent of the parties may be effected." *Worthington* & al. v. *Hillyer* & al. 4 *Mass. Rep.* 205.

Examining the resolve of 1839 upon these principles, there is no difficulty in the construction to be given to it.

It is found in this resolution, that by virtue of an act of the General Court, dividing the amount arising from the sale of certain townships laid out in the *Western* part of the state,

for the use of public schools, and certain excise moneys, the <span style="float:right">*Windham,*<br>July, 1841.</span> defendants received and held the same.    Had this been all, it would have been as general and as intelligible as the state- ment in the plaintiffs' bill; but the draftsman has added to the words—" An act of the General Court," these words— " passed *in* 1732 ;" and there was no such act of that year. Now, the real question is, whether those words are to nullify the grant; for we are bound to know, that there is no such act of 1732.    But we also know, that there was such an act passed in 1733.    The great fact found by the General Assem- bly, is, that the defendants have in their hands, moneys arising from the sale of certain *Western* townships, appropriated for the use of schools.    The time of the appropriation is comparatively unimportant.    The resolve, however, speaks of this appropriation as made in 1732.    But as no such act was made in that year, the conclusion is, that there never was such an appropriation, or that the time is mistaken. And when we find, that the very next year, such an appro- priation was made, there remains no reasonable doubt that the date of the act was mistaken.    That act, too, does not appear in the late editions of our printed statutes ; but the act of 1750 alludes to it, and in a recital of it, the year 1732 is named as the year of the lists upon which said appropria- tions were made, and the year 1733, the time, when the act of appropriation was passed ; from which it is apparent, that a mistake might, very naturally, have been made, by taking the date of the lists for the date of the act ; and we cannot doubt that such is the fact.    Now, such a mistake would not, according to the authorities cited, vitiate a deed.    There being enough, without this date, to show what was intended, that would be rejected, upon the principle that *utile non inu- tile vitiatur.*

Here there is a complete description, which cannot be mis- taken, of the source from which the defendants derived these moneys.    The time mentioned might have raised a doubt, had there been an act of 1732, and of 1733, on the same subject.    But there being no act of 1732 upon the subject, no doubt exists as to what was intended by the legislature ; and we know of no such narrow rule of construing legislative acts, as will prevent our carrying it into effect.

Without, therefore, alluding to the consideration that this

<div style="position:absolute; right:0; top:20%">The Willliman-<br>tic School So-<br>ciety<br>*v.*<br>The First<br>School Society<br>in Windham.</div>

*Windham,*
*July, 1841.*

The Willimantic School Society
*v.*
The First School Society in Windham.

fact has been found by a tribunal having cognizance of the subject matter, on a hearing between these parties, we think this objection cannot prevail.

2. It was further claimed by the defendants, that the fact that there was such an appropriation, did not tend to prove that the moneys in the defendants' hands were the avails of such appropriation; and so that evidence should not have been received. That the act of appropriation to the use of the defendants, proved sufficiently, that they had received the avails of such appropriation, can hardly be contended. And on the other hand, when the claim is, that they had received moneys under an appropriation, we cannot see why the party should not prove, that there was such an appropriation. A man is charged with receiving money under the will of a deceased person. We see no possible objection to showing, that, by the will, he was entitled to receive it, though it might not prove he had received it. How far it would tend to prove, in the case before us, that the defendants had received the money, is not for us to determine. But if a school society can have no way of raising funds, but from the legislature, or the donation of individuals, it would seem, that if it was shown, that they had funds in their hands, and they could not show that they were derived from individual bounty, and it was shown, that the legislature had made them a grant, as if the evidence was entitled to consideration, that this money was derived from the legislature.

3. Again, it was objected, that the receipts required by the statute to be lodged in the secretary's office, were not produced nor the loss proved, and so no evidence could be given that the money had ever been received of the state. It is to be observed, that it was the towns and societies which were to give the receipts, and they were to be given to the agent of the state, and not to the plaintiffs. Aside from this, however, we know of no rule of law that excludes all evidence of the payment of money, when there is a receipt, except the receipt itself. On the contrary, it is well settled, that the receipt is but evidence of the payment, and not the only evidence, and not at all necessary, when the fact can be established without it. *Rambert* v. *Cohen,* 4 *Esp. Ca.* 213. *Southwick* v. *Hayden,* 7 *Cowen* 334. 3 *Stark. Ev.* 1276.

4. But the great objection to the decree, is, that the act of

1839 is contrary to the principles of the constitution, affecting the vested rights of the defendants.   In support of this objection, several cases have been cited, tending to show, that when societies separate, the corporate property remains with the parent society.   That the legislature cannot take away vested rights from individuals or communities, and that grants to charitable uses are to be carried into effect according to the true intent of the donor, are principles too well established and too often recognized by this court, to be intentionally departed from.   The legislature, upon the divisions of towns and school societies, have always exercised the power, so far as we are informed, of making an equitable arrangement as to the common property and the common burthens; and unless this power is taken away, by the constitution, it must exist as before.

<div style="text-align:right"><em>Windham,</em><br>July, 1841.<br><br>The Williman-<br>tic School So-<br>ciety<br><em>v.</em><br>The First<br>School Society<br>in Windham.</div>

That instrument provides, that the rights and duties of all corporations shall remain as if the constitution had not been adopted, except as changed by that instrument itself.   That it was not intended to take away the power, always exercised by the legislature, of dividing these local communities, is apparent from the fact that the division of towns is expressly recognized in the 3rd section of the 3rd article of the constitution, provided that such new towns shall be entitled to only one representative.   And if the power to divide towns is not taken away, we know not where the power to divide minor communities of a similar character, is taken away. And if the right remains in the legislature of taking away from such corporations a portion of their inhabitants, for whose use the funds were given, it would seem to follow, that they must have a right to apportion those funds in such a manner as to do equal justice to all concerned; always taking care not to violate the intent of a donor thereby; which would not be allowed, even to legislative authority.

In the case before us, the funds must have been derived from the legislature; and looking to their acts, we shall see with what intent.   At an early period of our history, the General Assembly were extremely solicitous about the education of the children of this state; and in 1733, they passed the act appropriating the avails of " the *Western* lands," then so called, to be divided among the towns, and as therein pointed out, for the support of their respective schools forever; and

*Windham,*
*July, 1841.*

The Williman-
tic School So-
ciety
*v.*
The First
School Society
in Windham.

if misapplied, to be forfeited. By a subsequent act, forty shillings on a thousand pounds was also appropriated to a like use, to be forfeited in like manner. The legislature also directed the inspectors of schools, if there was any misapplication of public money allowed for the support of schools, such as would be likely to defeat the good end proposed, to lay the same before the General Assembly, that proper order might be given thereto. And by the revised acts of 1808, it appears, that more express provision had been made, that all public moneys for the support of schools should be divided among the several districts which had kept their school according to law, in proportion to their respective lists; which principle has ever since been pursued.

The original school fund was, then, derived from the legislature, and given to the towns, where there was but one society, for the use of schools—not for one or two schools—but for all the schools; which intention has since been more explicitly manifested. And long before the adoption of the constitution, the legislature reserved to themselves the right to correct any misapplication of those appropriations. At what time these moneys passed from the town of *Windham* to the first school society, does not appear. But it does appear, that many years before the constitution, and while the legislature had all power, they ordered that those moneys should be divided among the several school districts according to their respective lists, and reserved to themselves the power, in case of misapplication, to make further order.

The towns or societies, then, had no vested rights to these moneys, except for the uses mentioned. They were the mere organs of the General Assembly to see that these moneys are faithfully applied; and they remain liable to be taken from their controul, by the General Assembly, whenever this disposition is not made. The constitution did not alter the then existing rights of the parties, nor take away any power then subsisting, as it respects this subject. It was designed to confirm existing rights, not to change them. The tenure, then, by which this money was holden by the towns, remained as before. It was holden for the respective schools in that territory, by whatever name it was called; and if not so applied, it was subject to the order of the General Assembly for their use.

The object of the legislature was the diffusion of knowl-
edge among all the citizens, by means of common schools ;
and for this purpose, the money was given to the towns or
societies, to distribute among the districts, in such a manner
as to effect that object. The defendants say, no : it was
given to the town or society that first received it, to be dis-
tributed among its inhabitants so long as they belonged to
that town or society, and it was called by the name it then had.
Had this been the construction, every new town, where the
town received the money, and every new society, where it
was received by the society, would have no interest in this
fund ; and thus all the towns and societies created for more
than a century, would be deprived of the benefit of that
fund. With as much propriety might it be said, that it
was given merely for the use of those who were school child-
ren in 1733. That is the construction, under which the
defendants have acted ; and the General Assembly, being
informed of it, consider it a misapplication of the fund,
making a partial application of it ; and, by virtue of their
reserved right, they make "*further order.*" That order is,
not to take from them all the money, because they were
unfaithful stewards ; but to take from them that portion only,
which they claim to misapply. And in doing this, we think
entire justice has been done, and no legal or constitutional
principle violated.

If this reasoning is correct, the legislature might not only
do what in such cases they have ordinarily done, *i. e.* divide
the school funds, upon the division of the town or society
holding them, but if that is omitted at the time, under the
idea that those who held it, held it in trust for the districts,
then the legislature must have the power to make this division
afterwards, if those who hold the funds fail to make a proper
distribution of them, upon the simple ground before alluded
to, that there was a misapplication.

Hitherto we have supposed, that the legislature have divid-
ed this school society, upon the application of the plaintiffs ;
and so they are to be considered as voluntarily withdrawing
from the first society. Indeed, the argument of the defend-
ants has proceeded upon that assumption ; and it may have
been so  But so far as it appears to the court from the
exhibits, the General Assembly, in the year 1836, by a sove-

<div style="margin-left:2em">
*Windham,*
July, 1841.

The Willimantic School Society
*v.*
The First School Society in Windham.
</div>

reign act, set off these three districts, and separated them from the first society, without the application of any one; in consequence of which, and of the act of the defendants, they have been deprived of their interest in the common fund, for the support of their schools. Thus, they are left subject to the burthen, and yet deprived of the ordinary means. If this were the actual state of facts, it seems that the plaintiffs would have a reasonable ground of complaint that their constitutional rights were invaded, and that a valuable fund had been taken from them, without consideration.

Aside from this, however, we think, that the defendants have no reasonable ground to complain that their constitutional rights are violated; and that entire justice has been done to them; and they are not entitled to a new trial.

In this opinion the other Judges concurred, except CHURCH, J., who was absent.

<div style="text-align:right">New trial not to be granted.</div>