# CHARLESTON

## BOARD OF ED'N *v.* BOARD OF ED'N.

Submitted June 9th, 1887.—Decided November 19th, 1887.

1. SCHOOLS AND SCHOOL-DISTRICTS—CORPORATE DUTIES.

Public duties are required of such corporations as counties and districts, as a part of the machinery of the State government, and, in order that they may properly perform these duties, they are invested with certain corporate powers; but their functions are

wholly of a public nature, and they are at all times subject to the will of the Legislature unless restrained by the Constitution.   (p. 430.)

2. SCHOOLS AND SCHOOL-DISTRICTS—DIVISION OF—DISTRIBUTION OF FUNDS.

Upon the division of an old public corporation, and the creation of a new one, out of a part of its inhabitants and territory, the Legislature may provide for an equitable apportionment or division of the corporate property, and impose upon the new corporation or upon the people and territory thus disannexed, the obligation to pay an equitable portion of the corporate debts.   (p. 430.)

3. SCHOOLS AND SCHOOL-DISTRICTS.

Where the Legislature does not prescribe any regulation for the apportionment of the property, or that the new corporation shall pay any portion of the debt of the old, the old corporation will hold all the corporate property within its new limits, and be entitled to all the debts due the old corporation, and be responsible for all the debts of the corporation, existing before and at the time of the division; and the new corporation will hold all the corporate property falling within its boundaries, to which the old corporation will have no claim.   (p. 431.)

4. SCHOOLS AND SCHOOL-DISTRICTS.

The powers exercised in the division of public corporations being purely legislative, the power to prescribe the rule by which the property of the corporation shall be divided, and the debts apportioned, being incidental to the power to divide the territory, must also be strictly legislative, and the courts have no authority over the subject, and can only construe the act of the Legislature, and see that the legislative will is carried into effect.   (p. 433.)

5. SCHOOLS AND SCHOOL-DISTRICTS.

The Legislature had the right to confer its power to divide public corporations on the County Court, and though, in the act conferring such power, it gave no directions as to the apportionment of the property and debts of the old corporation, yet, as incident to the power granted, the County Court had the same power in that regard as existed in the Legislature before the act was passed; and if such court divide a district, and, the order making such division, is silent as to the apportionment of corporate property and debts, the same result will follow as if the district had been divided by the Legislature, and the act was silent as to the apportionment of the corporate property and debts of the old corporation.   (p. 433.)

6. SCHOOLS AND SCHOOL-DISTRICTS.

The County Court of Barbour, by authority vested in it by section 19, ch. 5, Acts 1881, divided the old education district of Bar-

54

ker, and from said territory created a new district called "Valley District," and said order of division was silent as to the apportionment of the corporate property and debts of Barker district. At the time of such division, Barker district owed a debt of over $1,100.00, which it paid, and filed its bill against the board of education of the new Valley district for contribution. *Held*, that by said order of division, Barker district held all the corporate property within its new limits, and Valley district all the corporate property within its boundaries, and the old or Barker district was entitled to all the debts due it, before and at the time of the division, and liable to pay all its debts, and had no claim on Valley district for contribution, and the decree requiring Valley district to pay a part of the debt was reversed and the bill dismissed.

*Dayton & Teter* for appellant.

*T. A. Bradford* for appellee.

JOHNSON, PRESIDENT :

On the twenty seventh day of June, 1881, the County Court of Barbour county in proper form, and with proper parties before it, entered the following order : "That a new district be, and the same is hereby, established out of Barker district, including and composed of the territory of said Barker district lying on the west side of the Tygart's Valley river and bounded as follows. [Here the boundary is inserted.] Said district shall be known as and called 'Valley District' " etc.

Before the division, the Board of Education of the old or Barker district, had built a number of school-houses, and in payment of balance therefor had executed two promissory notes, one for $625.00, dated the eleventh day of December, 1869, payable five years after date, to Loronzo Denton and Daniel C. Wilmoth, with interest from date; the other for $475.00, bearing the same date, payable five years after date, to Daniel C. Wilmoth, with interest from date. The plaintiff Board of Education of Barker district filed its bill at January rules, 1884, in the Circuit Court of Barbour county, in which it set out the above facts, and exhibited a copy of the order of the County Court dividing said district, and also copies of said two notes. The bill further alleges that fifteen school-houses had been built in the said district,—six in what is now the new district, and nine in the old; that the six cost $3,313.65, and the nine, $4,661.16; that the cost

of building all said school-houses had long since been paid by the plaintiff, before the division, except the sum of $1,150.00, and that this debt would also have been paid before said division, but it was involved in a tedious chancery suit between other parties, and the said Barker district did not know to whom to make payment, and therefore chose to wait the termination of said suit; that at the time of the division, in 1881, the taxable property in what is now Barker district amounted to the sum of $156,910.29, and the taxable property in what is now Valley district to the sum of $100,-790.13, and that the aggregate of all the taxable property in the old territory of Barker district was, at that time, $257,-700.42; and that the said debt of $1,150.00, (it should be $1,100.00,) with the interest thereon, constitutes a charge on all the property in both of said districts. The plaintiff represents that it "has paid nearly the whole of the said debt of $1,150.00, together with the interest thereon accrued, which amounts to a large sum of money, to wit, to the sum of $————, and for the balance it has levied a sufficient sum upon the tax-payers of its district to liquidate the whole debt;" that it has by all the means in its power sought an amicable settlement of said debt with the defendant, but it, acting on the mistaken idea that the plaintiff is responsible for the whole debt, has refused to settle. The debt was incurred in 1869, long before the new district was created. The plaintiff is advised that it has a right to come into this court and ask that the said defendant be compelled to pay the plaintiff its just proportion of said debt, and interest thereon; "and that the portion of said debt which the said defendant should be required to pay should bear such a proportion to the whole debt as its taxable property bore to the aggregate amount of all the taxable property in both of said districts in the year 1881, which will be about $450, with interest thereon from the eleventh day of December, 1869." The prayer of the bill is that the cause be referred to a commissioner, with instructions to state and settle the accounts between the plaintiff and defendant, and that plaintiff should have a decree for the amount so ascertained, and for general relief. On the twelfth day of March, 1884, the defendant demurred to the bill, which was overruled.

On the nineteenth day of July, 1884, an order was made referring the cause to Commissioner J. L. Holt, who was directed to ascertain and report what proportion of the debt of $1,150.00, mentioned in the bill, the defendant ought to pay, and, in making said settlement, he should have reference to the taxable values in said district of Barker before the same was divided, and also the taxable values in both said districts since the division.

On the seventeenth day of October the defendant answered, insisting on its demurrer, and resting its defence on the ground that the better and more costly school-houses had been built in what is now Barker district, and that the house for which the debt was incurred is in the old territory, and that the district had collected debts due to it at the time of the division, and appropriated this money to its own use, etc.

Commissioner Hall made his report, to which there were exceptions, which were overruled; but at the October term, 1885, the court, after overruling the exceptions, referred the cause to Commissioner Peck, with the same instructions as to the former commissioner, and further to ascertain and report "what proportion of credit said defendant is entitled to receive, if any, on account of any payments that may have been made to the plaintiff of debts due to the district of Barker" before the division. Commissioner Peck reported the amount due to Barker district on the eleventh day of May, 1886, $698.47.

To this report three exceptions were filed—*First*, because the basis adopted by the commissioner is not the true basis upon which the settlement should be made; *second*, because said commissioner has failed to report, as requested, the settlement upon a basis of population, enumeration, and area; *third*, because no notice is taken of, and credit given for, the largely disproportionate amount of repairs done in Barker over Valley district when the two were one district.

On the fourteenth day of July, 1886, the cause was heard, on papers formerly read, etc., and on the report of Commissioner Peck, and the exceptions thereto ; which exceptions were overruled, and the report confirmed, and a personal decree rendered against the defendant for $698.47, with interest from the eleventh day of May, 1886, and costs.

From this decree the defendant appealed.    The first error assigned is the overruling the demurrer, because it is insisted that the plaintiff had a complete and adequate remedy at law.    In answer to this it is said, by counsel for appellee, that "the auxiliary, concurrent, and exclusive jurisdiction of courts of equity is so extensive that it is almost impossible to mention the numerous subjects of which they take cognizance.    The subjects of partnership and contribution are peculiarly within such jurisdiction, and it is believed that the winding up of the affairs of corporations, whether private or municipal, is a proper subject for the exercise of equitable jurisdiction.    Therefore equity had jurisdiction of this suit, and it is insisted that it was the proper forum in which to settle the proper question involved in it."    It is insisted by counsel for appellant that, if equity had jurisdiction at all, it was to take and settle an account, and it is claimed by him, under the authorities, that it does not fall within that branch of equity jurisdiction, as the accounts are not complicated, and no discovery is sought.

Counsel on both sides have entirely misconceived the true question involved in this controversy, and no authority has been cited on that question.    The true question is : If there was not by the power that made the division of the district any apportionment of the debts owed by the old district, will any suit or action lie to compel the new district to pay any part of the old debt ?    Corporations of the kind here designated "school-districts" are properly denominated public corporations, for the reason that they are but parts of the machinery employed in carrying on the affairs of the State ; and it is well settled law that the charters under which such corporations are created, may be changed modified, or repealed, as the exigencies of the public service or the public welfare may demand.    2 Kent Comm. (12th Ed.) 305 ; Ang. & A. Corp., § 31 ; *McKim* v. *Odom*, 3 Bland 407 ; *St. Louis* v. *Allen*, 13 Mo. 400 ; *School* v. *Tatman*, 13 Ill. 27 ; *Yarmouth* v. *Skillings*, 45 Me. 141 ; *Laramie Co.* v. *Albany Co.*, 92 U. S. 307.

Such corporations are composed of all the inhabitants of the territory included in the political organization ; and the attribute of individuality is conferred on the entire mass

of such residents, and it may be modified or taken away at the mere will of the Legislature, according to its own views of public convenience, and without any necessity for the consent of those composing the body politic. 1 Greenl. Ev. (12th Ed.) § 331; *Laramie Co.* v. *Albany Co.*, *supra.* Public duties are required of such corporations as a part of the machinery of the State, and, in order that they may be able to perform such duties, they are invested with certain corporate powers; but their functions are wholly of a public nature, and they are at all times subject to the will of the Legislature, unless restricted by the Constitution. *Londonderry* v. *Derry*, 8 N. H. 320; *People* v. *Draper*, 15 N. Y. 532; *Sill* v. *Corning*, Id. 297; *Smith* v. *Village of Adrian*, 1 Mich. 495; *State* v. *Mayor*, etc., 24 Ala. 701; *City of Olney* v. *Harvey*, 50 Ill. 453; *Barkley* v. *Levee Commissioners*, 93 U. S. 258; *Sangamon Co.* v. *City of Springfield*, 63 Ill. 66; *Town of Gramby* v. *Thruston*, 23 Conn. 416; *Town of Milwaukee* v. *City of Milwaukee*, 12 Wis. 93; *County of Richland* v. *County of Lawrence*, 12 Ill. 1; *North Yarmouth* v. *Skilling*, 45 Me. 133; *Mt. Pleasant* v. *Beckwith*, 100 U. S. 514; *Gorham* v. *Springfield*, 21 Me. 58; *People* v. *Morrell*, 21 Wend. 563; *Beckwith* v. *Racine*, 7 Biss. 142; *Wade* v. *City of Richmond*, 18 Grat. 583; *Burns* v. *Clarion Co.*, 62 Pa. St. 422; *Dunmore's Appeal*, 52 Pa. St. 375; *People* v. *Pinckney*, 32 N. Y. 377; *City of St. Louis* v. *Russell*, 9 Mo. 507.

But upon the division of an old public corporation, and the creation of a new one out of a part of its inhabitants and territory, the Legislature may provide for an equitable apportionment or division of the corporate property, and impose upon the new corporation, or upon the people and territory thus disannexed, the obligation to pay an equitable proportion of the corporate debt. 1 Dill. Mun. Corp., § 189; *Bristol* v. *New Chester*, 3 N. H. 524; *Londonderry* v. *Derry*, 8 N. H. 320; *Love* v. *Schenck*, 12 Ired. 304; *Commissioners Sedgwick Co.* v *Bailey*, 11 Kan. 631; *School Soc.* v *School Soc.*, 14 Conn. 457; *Bridge Co.* v. *Town of East Hartford*, 16 Conn. 149; *Town of Granby* v. *Thurston*, 23 Conn. 417; *North Hempstead* v. *Hempstead*, 2 Wend. 109; *Town of Milwaukee* v. *City of Milwaukee*, 12 Wis. 93; *Laramie Co.* v. *Albany Co.*, 92 U. S. 307.

In *Bristol* v. *New Chester*, 3 N. H. 524, *supra*, Richardson, C. J., said : " The power to divide towns is strictly legislative, and the power to prescribe the rule by which a division of the property of the old town shall be made is incident to the power to divide the territory, and is in its nature purely legislative. No general rule can be prescribed by which an equal and just division, in such cases, can be made. Such a division must be founded upon the circumstances of each particular case."

In the case cited from 14 Conn., *supra*, Williams, C. J., said : " The Legislature, upon the division of towns and school-societies, have always exercised the power, so far as we are informed, of making an equitable arrangement as to the common property and common burdens, and unless this power is taken away by the Constitution it must exist as before. * * * If the right remains in the Legislature of taking away from such corporations a portion of their inhabitants for whose use the funds were given, it would seem to follow that they must have a right to apportion these in such a manner as to do equal justice to all concerned; always taking care not to violate the intent of a donor thereby, which would not be allowed, even to legislative authority." Where the Legislature does not prescribe any regulations for any apportionment of the property, or that the new corporation shall pay any portion of the debt of the old, the old corporation will hold all the corporate property within its new limits, and be entitled to all the claims owing to the old corporation, and is responsible for all the debts of the corporation existing before and at the time of the division, and the new corporation will hold all the corporate property falling within its boundaries, to which the old corporation will have no claim. 1 Dill. Mun. Corp., § 189; *Laramie Co.* v. *Albany Co.*, 92 U. S. 307; *North Yarmouth* v. *Skillings*, 45 Me. 141 ; *Greenville* v. *Mason*, 53 N. H. 515; *People* v. *Trustees of Schools*, 86 Ill. 613 ; *Town of Depere* v. *Town of Bellevue*, 31 Wis. 120. In the last-named case it was held that if a part of the territory and inhabitants of a town are separated from it by annexation to another, or by the creation of a new corporation, the remaining part of the town, or the former corporation, retains all its property and

franchises, and *remains subject to all its obligations*, unless some express provision to the contrary is made by the act authorizing the separation.

In *Laramie Co.* v. *Albany Co.*, 92 U. S. 307, which we have already cited several times, the very able opinion of Mr. Justice Clifford shows the correctness of the several propositions we have announced. In that case it was held, unless the Constitution of a State or the organic law of a Territory otherwise prescribes, the Legislature has the power to diminish or enlarge the area of a county whenever the public convenience or necessity requires; and that where the Legislature of Wyoming Territory organized two new counties, and included in their limits a part of the territory of an existing county, but made no provision for apportioning debts or liabilities, that the old county, being solely responsible for the debts and liabilities it had previously incurred, had, on discharging them, no claim on the new counties for contribution.

Where a municipal corporation is legislated out of existence, and its territory annexed to other corporations, it has been held that unless the Legislature otherwise provides, these other corporations become entitled to all its property and immunities, and are severally liable for a proportionate share of all its then subsisting legal debts, and vested with its power to raise revenue wherewith to pay them, by levying taxes upon the property transferred, and the persons residing thereon, and that the remedy of the creditors of the extinguished corporation is in equity against the corporations succeeding to its property and powers. *Mt. Pleasant* v. *Beckwith*, 100 U. S. 514.

It has also been held where the Legislature, having in the act divided a town, and incorporating a part of it into a new town, enacted that the latter town should be holden to pay its proportion towards the support of all paupers then on expense in the old town, which it did for two years, after which, on petition of the new town, another act was passed exonerating this town from such liability in future, that the latter act was unconstitutional and void, as it impaired the obligation of the contract created by the original act of division and incorporation. *Bowdoinham* v. *Richmond*, 6 Me. 112.

From what we have said, the power exercised in the division of public corporations being purely legislative, and the power to prescribe the rule by which the property of the corporation shall be divided, and its debts apportioned, being incident to the power to divide the territory, must also be strictly legislative. The courts have no authority over the subject, and can only construe the act of the Legislature and see that the legislative will is carried into effect. *Bristol* v. *New Chester*, 3 N. H. 524; *Overseers of Norwich* v. *Overseers of New Berlin*, 18 Johns. 382; *City of St. Louis* v. *Russell*, 9 Mo. 507, top p. 299.

There is no restrictive power found in our Constitution, as to the division of public corporations, except as to the formation of new counties. That restriction is in the language following: "No new county shall hereafter be formed in this State with an area less than four hundred square miles, nor with a population of less than six thousand; nor shall any county from which a new county, or part thereof, shall be taken, be reduced in area below four hundred square miles, nor in population below six thousand; nor shall any new county be formed without the consent of a majority of the voters residing within the boundaries of the proposed new county, and voting on the question." Const. art. 9, § 8.

But it may be said that the Legislature did not pass any act providing for the division of the district, and therefore the authorities we have cited do not apply. But the Legislature did pass the following statute authorizing the division of districts: "Whenever the County Court of a county shall deem it advisable to change the boundary line between two or more districts, or to establish a new district out of another or two or more districts, or to consolidate two or more existing districts into one, it may make such change, establishment, or consolidation by an order entered of record ; and, if a surveyor be deemed necessary, may employ the surveyor of lands for the county, or any other competent surveyor, who shall survey and make a plat of the several districts as the same are thus altered, on which the new lines shall be plainly delineated, noting particularly such places of notoriety or prominent objects through or by which such lines

pass, and return such plat and description to such court; and the same shall be filed in the clerk's office of such court, and recorded by the clerk." Chapter 5, Acts 1881, § 19; chapter 39, Warth's Code, § 19.

In *Wright* v. *Nagle*, 101 U. S. 794, it was held that "a grant of a franchise in some form is necessary to enable an individual to establish and maintain a toll-bridge for public travel." The Legislature of a State alone has authority to make such a grant. It may exercise this authority by direct legislation, or through agencies duly established, having power for that purpose. The grant, when made, binds the public, and is directly or indirectly the act of the State. The easement is a legislative grant, whether made by the Legislature itself or by any one of its properly constituted instrumentalities."

In *Mason* v. *Bridge Co.*, 17 W. Va. 396, this Court held that franchises and corporate rights granted indirectly by the State, through instrumentalities provided by general laws for such purposes, are the same in effect as if the power conferring such franchises and rights had been exercised directly by the State itself. *Shepherd* v. *City of Wheeling, ante,* 635. When the Legislature passed the statute it conferred on the County Court the same power to divide districts as it possessed itself, and the incident to that power went with it to make provision for apportionment of the property owned by the district, and also whether the new district should pay any part of the old debt, and, if so, how much.

As the court was silent on this subject when the division was made, it follows that the old district of Barker held all the corporate property within its limits, was entitled to collect and appropriate to its corporate use, all claims due the district, and was bound for all the existing indebtedness of the district. The new district of Valley was entitled to hold all the corporate property of the old district which on the division fell within its bounds, and was not liable for any of the indebtedness of the old district; and if Barker district has paid all of the indebtedness of the district existing at the time of division, it has no claim against Valley district for contribution. The decree of the Circuit Court is reversed, and the bill dismissed.

REVERSED.