# CHARLESTON.

STATE *ex rel.* M. COLLIER *et al. v.* COUNTY COURT OF MINGO COUNTY.

Submitted October 28, 1924.　Decided December·2, 1924.

1. PROHIBITION—*Writ of Prohibition Will Issue Against County Court Threatening Extra Judicial Action Affecting Interests of Residents and Taxpayers, on Their Relation. Though Not Privately Affected.*

Where a county court threatens extra-judicial action affecting the interests of residents and taxpayers of a magisterial district, a writ of prohibition may be awarded at their relation, even though they do not have any interest in the subject matter different from that possessed by other members of the general public. (p. 516.)

(Prohibition. 32 Cyc. p. 622).

2. SAME—*To Warrant Prohibition, Act Threatened Must Be Judicial or Quasi Judicial; If Act Threatened Legislative or Merely Ministerial, Prohibition Will not Lie.*

To warrant prohibition the act threatened must be judicial or quasi-judicial in its nature; if legislative or merely ministerial the writ will not lie. (p. 618.)

(Prohibition, 32 Cyc. pp. 600, 601).

3. SAME—*Petition Should Specifically Show Act or Acts Threatened to be Done and Sought to be Prohibited.*

The petition for the writ should show specifically the act or acts threatened to be done and sought to be prohibited. (p. 618.)

(Prohibition. 32 Cyc. p. 626).

NOTE: Parenthetical references by Editors C. J.—Cyc. Not part of syllabi.

Original proceedings by the State, on relation of M. Collier and others, against the County Court of Mingo County for writ of prohibition.

*Writ denied.*

*Bias·& Chafin,* for petitioners.
*G. R. C. Wiles,* for respondents.

MEREDITH, PRESIDENT:

Two of the plaintiffs as residents, citizens and tax-payers of Warfield District, and the other two plaintiffs, residents,

citizens and tax-payers of Harvey District, Mingo County, suing on behalf of themselves and all other residents, citizens and tax-payers similarly situated in the two respective districts, by writ of prohibition seek to prevent the County Court of Mingo County and the commissioners thereof from treating or considering as valid a certain order which the County Court claims to have entered on August 15, 1924, purporting to consolidate the two districts into one under the name of "Harvey District," on the ground that the alleged order is invalid, because, among other reasons, the County Court was not in session when the order was entered.

The respondents moved to quash the rule heretofore awarded on the ground that petitioners can not maintain the writ as residents, citizens and tax-payers suing on behalf of themselves and all others similarly situated, because they have no special personal interest.

The facts in this case fully appear from the opinion written by Judge LIVELY in the case of *County Court of Mingo County* v. *Bailey, Judge,* handed down by this court October 14, 1924. The circuit court had awarded an injunction at the instance of Collier and others, residents, citizens and tax-payers of the two districts, inhibiting the county court from carrying out its alleged order and directed the County Court to expunge the order from its records, on the ground that it had not been lawfully entered. In that instance, we held the circuit court was without jurisdiction and awarded the writ. The petitioners in the present case seek to have done by prohibition what we held they could not obtain by injunction. The matter has simply been transferred from a court of equity to a court of law. The question involved is in substance the same. The ground for awarding the writ was that the complainants in the chancery cause did not in their pleading show that they would be subjected to any special injury of a private nature, as distinguished from that which they would suffer in common with the general public. Does such a rule obtain in prohibition? We think not. At common law the relator need have no personal interest in the proceedings sought to be prohibited. The writ would issue upon the application of a stranger to the record of the suit or proceeding sought to be prohibited. The original theory upon

which the writ issued was that where an inferior court usurped jurisdiction or exceeded its jurisdiction it acted in contempt of the sovereign—the fountain of justice and the source of jurisdiction. In modern practice the state stands in the relation of sovereign; so that any court, proceeding in excess of the jurisdiction conferred upon it, in principle acts in contempt of the state. 2 Spelling's Inj. and Ex. Rem. §§ 1745, 1746; High's Ex. Rem. §779; *Mayo* v. *James,* 12 Gratt. (Va.) 17; *Worthington* v. *Jeffries,* L. R. 10 C. P. 379; *State* v. *Burckhart,* 87 Mo. 533; *Thompson* v. *Tracy* ,60 N. Y. 31; *State* v. *Superior Court,* 7 Wash. 77.; 7 Comyn's Digest (5th ed.), 141; 8 Bacon's Abridg. 210.

In *St. Mary's* v. *Woods, Judge,* 67 W. Va. 110, 67 S. E. 176, 21 Ann. Cas. 164, this court held that ''A city, or persons who are residents and tax-payers in it, have such interest as will enable them to maintain a writ of prohibition against a circuit court which is proceeding to amend the charter of such city without jurisdiction to do so in the particular case.'' If citizens could maintain prohibition in that case we see no reason why they may not do so in this, in so far as their right to be the relators is concerned. The petitioning citizens in that case showed no special personal interests beyond those possessed by all citizens similarly situated. Both Spelling and High in the sections above cited say that the strict and highly technical rules with respect to parties which apply to most other extraordinary remedies, do not apply to a proceeding in prohibition, owing to the fact that it is regarded more than others as a matter of public interest, in which the state is largely interested. So we hold that the relators need not show any special interest beyond that shared in common with others similarly situated, and that they have suffiicent interest, if any need be shown, to be relators in the cause.

Other grounds urged on respondents' motion to quash are: (1) that the action sought to be prohibited is legislative or governmental, and not judicial or quasi-judicial; (2) that prohibition will not lie to review or control the action of an inferior court, where it has jurisdiction of the subject matter, although in the exercise thereof it has proceeded erroneously; and (3) that being a preventive remedy only, it can not be invoked to review a proceeding already completed.

It is well settled that prohibition lies only against courts or tribunals exercising judicial or quasi-judicial powers. What are the matters sought to be prohibited? It is charged: (1) that the consolidation order is void, and petitioners seek to prohibit the county court from treating it as valid; (2) that unless this is done, the county court will treat Warfield District as abolished and the two districts as one; (3) will treat all offices heretofore existing in Warfield District as abolished, and all officers of that district in office as removed from office, and will impose upon the district officers of Harvey District the functions and duties of officers of what is and has been Warfield District; and (4) will impose upon the so consolidated districts and the tax-payers thereof "all debts, including the bonded and current debts of both of said districts, and levy and assess taxes against the citizens and tax-payers of what is and has been both districts as and for the citizens and tax-payers of one district at a uniform rate throughout the whole of the said consolidated districts."

Under section 19, chapter 39, Code, the county court is authorized to consolidate two or more existing magisterial districts. This power is legislative, not judicial in any sense. *Board of Education* v. *Board of Education,* 30 W. Va. 424, 4 S. E. 640; *County Court of Mingo County* v. *Bailey, Judge, supra.* The county court therefore could not by prohibition be prevented from consolidating the two districts. This is conceded by counsel for petitioners; but they claim that the consolidation order is void. Say it is; the court had the power to enter it, just as the legislature has the power to enact an unconstitutional statute. If the order is void, it has no binding force. We think its power to enter such a void order is legislative in character, and its entry could not be prevented by judicial process. Are the further acts specified, which petitioners seek to prohibit, judicial in their nature? The county court proposes to deal with the consolidated districts as a unit. Let us assume that the consolidation order is void; that in effect, no order was entered, yet the county court proposes to do what petitioners charge. Can it be prevented from so doing by prohibition? It becomes necessary to inquire into the relations existing between the county court and a magisterial district. A magisterial district is but

a mere territorial sub-division of a county, created for political and administrative purposes. *Moss* v. *County of Tazewell*, 112 Va. 897, 72 S. E. 945; *Neale* v. *County Court*, 43 W. Va. 90, 27 S. E. 370. It is not a corporate entity. It can not sue or be sued. It has no tax levying or debt incurring power. It has no officers it can call upon to perform merely district functions. While certain officers are regularly elected by the voters of the district, such as constables and justices, yet they do not perform any governmental functions for the district as such, though they may be called "district officers." In so far as it has a government in relation to its purely local officers, that government is the county court. The county court is the legal representative of the district. *West Virginia* v. *Turnpike Co.*, 56 W. Va. 550, 49 S. E. 454. Strictly speaking, a magisterial district has no local government of its own, *Neale* v. *County Court, supra.* Of course, no argument is needed to show that a school district, though it may have the same boundaries as the magisterial district, is entirely separate and distinct from it. As such for educational purposes, it has a local government, called a board of education—a corporate entity, capable of contracting, suing and being sued. But not so as to the magisterial district.

Now what are the duties of the county court with respect to the management of the affairs of the magisterial district? Chief among these is that relating to the establishment and maintenance of roads and bridges therein, and the levying of taxes therefor, upon the property in the district. Under some circumstances the appropriation of property for a road may be a judicial act, but there is no charge in the petition that the county court intends to establish any road or to do any act with respect to district affairs that could be construed as a judicial exercise of power. If it be conceded that any of the duties of the county court respecting magisterial districts are judicial, yet there is nothing specifically pointed out in the petition which the court threatens to perform that in any wise calls for the exercise of judicial power.

It is contended that the county court, if not prevented, will treat the district officers of Warfield District as removed, and will recognize the officers of Harvey District as the legal officers of the consolidated district. Suppose it does; what dif-

ference does that make in this proceeding? We see none whatever. We are not aware of a single instance in which the county court can exercise judicial authority over any district officer, such as justices or constables, after they have been elected and qualified. We do not say no such instance can arise, but none occurs to us now. The same is true as to commissioners of the board of education. What supervision does the county court have over them? None. We can not see how it would make any difference in this case whether the county court regards the commissioners of the board of education in Warfield District as legally holding their respective offices or not. There is no duty of a judicial nature to be performed by the county court toward a board of education or to the officers thereof, none calling for the exercise of judicial power. Judicial duties might devolve upon the county court in the matter of election of district officers, of course; it might be called upon to hear and determine contests in the election of justices or constables; but after election and qualification, we know of no instance in which the county court may exercise judicial authority respecting them. Besides, in the petition filed, nothing is specified in relaton thereto. Not a single district officer is named; no act is singled out in regard to the district officers which petitioners seek to have prevented. If the consolidation order is invalid, a question which we must decline to decide in this proceeding, then the district officers, justices, constables, and members of the board of education are not at all legally affected thereby. They may go on discharging their duties in disregard of the consolidation order.

The remaining charge is that the county court will impose upon the consolidated district all the debts, both bonded and current of both districts, and levy taxes against the tax-payers of the districts as consolidated at a uniform rate. Here we have no specifications as to the respective amounts of debts either bonded or current, or either district; nor that a uniform rate as now contemplated will be different from the rate required if the districts are not consolidated. Again we find no threatened exercise of judicial power. A petition for a writ of prohibition ought to be specific. Were we to award the writ we could not safely do so in the broad terms sought.

But we are of opinion that the petitioners are not entitled to it for the reason that none of the acts sought to be prohibited are judicial or quasi-judicial in their nature.

The writ is denied.

*Writ denied.*