Clyde C. DEAN, Appellant,

v.

Vernon SHIRER and John Dukes Wactor, Appellees.

No. 75–1145.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 8, 1975.

Decided Aug. 30, 1976.

van, Columbia, S. C., on brief), for appellant.

Joseph C. Coleman, Deputy Atty. Gen., Columbia, S. C., of S. C., W. Turner Klapman, Orangeburg, S. C. (Daniel R. McLeod, Atty. Gen., Columbia, S. C., of S. C., on brief), for appellees.

Before BOREMAN, Senior Circuit Judge, WIDENER, Circuit Judge, and WATKINS, Senior District Judge.*

WIDENER, Circuit Judge.

Clyde C. Dean appeals the dismissal on motion for summary judgment of his complaint against Vernon Shirer, alleging that he was "deprived of his personal freedom, of the liberty to express his views and to practice his profession, and was embarrassed, humiliated, and put in fear of his life" under color of state law in violation of 42 U.S.C. § 1983. He alleges the same acts are actionable under the law of South Carolina.

Dean was an attorney licensed to practice law in South Carolina.[1] On February 12, 1974, Dean represented a client in the municipal court of Elloree, South Carolina. Defendant Vernon Shirer was the presiding municipal judge.[2] After court had been adjourned, Dean went outside where a crowd had gathered and, in response to an inquiry, said to someone in the crowd, "You should know you can't get a fair trial in Elloree."

Upon hearing this, defendant Wactor, a Deputy Sheriff of Orangeburg County, South Carolina, forced Dean back into the courtroom. Shirer berated Dean with a long string of offensive and threatening epithets, including aspersions as to Dean's ancestry. Shirer threatened Dean with physical abuse and threatened to have him put in jail. Upon the conclusion of this berating, Dean, at Shirer's direction, returned to the crowd and told the people,

Thomas H. Pope, III, Columbia, S. C. (Daniel A. Speights, Glenn, Porter & Sulli-

---

* Sitting by designation. Senior District Judge, U. S. District Court for the District of Maryland.

1. Dean died while this appeal was pending.

2. Shirer was also the Mayor of Elloree at that time.

"You can get a fair trial in Elloree if you know how to do it." Dean maintains that he made this statement out of fear.

The courtroom, which is in the Town Hall of Elloree, is also used as the Mayor's office. Thus, the room served both as a courtroom with Shirer as the presiding judge and the office of Shirer as the Mayor of the town.

■ Because this case was decided on motion for summary judgment, all factual inferences (as we have recited them) are to be taken in the light most favorable to the party opposing the motion, *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962), but Dean admits that his remarks outside the courtroom were degrading to the court and intended so to be as he amplifies them in his answers to interrogatories.

I

Shirer moves to dismiss the case here as moot on the ground that Dean died on April 6, 1975, and that his action under 42 U.S.C. § 1983 does not survive. Counsel for plaintiff has moved to substitute Mrs. Clyde C. Dean, administratrix of the Estate of Clyde C. Dean, as the proper party to this action.

The Supreme Court has noted in *Moor v. County of Alameda*, 411 U.S. 693, 702–03 and n. 14, 93 S.Ct. 1785, 1792, 36 L.Ed.2d 596 (1973), that the question of survivability under 42 U.S.C. § 1983 is an area which is not covered by existing federal law. Although dictum, the Court suggests, "Pursuant to § 1988 state survivorship statutes which reverse the common-law rule may be used in the context of actions brought under § 1983," and refers to *Brazier v. Cherry*, 293 F.2d 401 (5th Cir.), cert. den., 368 U.S. 921 (1961), 82 S.Ct. 243, 7 L.Ed.2d 136.

Several circuits have stated it is appropriate for federal courts to look to state law to determine whether a § 1983 action survives: *Spence v. Staras*, 507 F.2d 554 (7th Cir. 1974); *Hall v. Wooten*, 506 F.2d 564 (6th Cir. 1974); *Brazier v. Cherry*, 293 F.2d 401 (5th Cir.), cert. den., 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961); see *Mattis v.*

*Schnarr*, 502 F.2d 588 (8th Cir. 1974). And in *Scott v. Vandiver*, 476 F.2d 238 (4th Cir. 1973), in which this court looked to state law to ascertain a sheriff's responsibility in a § 1983 action for the actions of his subordinates, we noted, at page 242, that in questions of survivability of a § 1983 cause of action, federal courts have relied on state law, citing *Brazier v. Cherry*, supra.

■ The court, in *Brazier*, pointed out that while Congress has the "constitutional power to spell out a comprehensive right of survival for civil rights claims," 293 F.2d at 406, Congress has not exercised this power and therefore resort must be taken to state law, by authority of 42 U.S.C. § 1988.

■ We thus turn to the law of South Carolina to determine if Dean's cause of action survives. At common law, actions in tort did not survive. *Carver v. Morrow*, 213 S.C. 199, 48 S.E.2d 814 (1948); *Mattison v. Palmetto State Life Ins. Co.*, 197 S.C. 256, 15 S.E.2d 117 (1941); see *Moor*, 411 U.S. at 702, n. 14, 93 S.Ct. 1785. However, the South Carolina legislature has enacted a provision for survival of injuries to the person.

"Causes of action for and in respect to any and all injuries and trespasses to and upon real estate and any and all injuries to the person or to personal property shall survive both to and against the personal or real representative, as the case may be, of a deceased person and the legal representative of an insolvent person or a defunct or insolvent corporation, any law or rule to the contrary notwithstanding." S.C.Code § 10–209.

Exceptions to such survivability of actions for personal injuries are actions for malicious prosecution, slander, fraud and deceit. See *Brewer v. Graydon*, 233 S.C. 124, 103 S.E.2d 767 (1958).

If Dean's case is bottomed on the words used against him, it would be more nearly akin to slander under 42 U.S.C. § 1983 and would not survive under South Carolina law, *Carver*, supra. And in all events it has recently been held that defamation is not actionable under 42 U.S.C. § 1983. *Paul v.*

*Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). But, especially since we consider the case as one on summary judgment, we must consider the actionable wrong charged to be allied more closely to false imprisonment or assault. We are of opinion false imprisonment and assault are "injuries to the person" under S.C.Code § 10–209 and as such do survive. *Brewer* cites malicious prosecution, slander and fraud and deceit as the exceptions to the statute and in the absence of a controlling South Carolina decision, no other exception being called to our attention, we give effect to the literal wording of the statute as we construe it and hold the cause of action survives as it may be equated to assault or false imprisonment.

## II

■ The district court granted summary judgment in favor of Shirer on the ground that he was clothed with judicial immunity.[3] It held that Shirer "had the authority to maintain order and proper procedure in his court by use of the contempt power." It categorized Shirer's acts "only as being in excess of his power, not clearly beyond his jurisdiction."

The doctrine of judicial immunity was first enunciated by the Supreme Court in *Bradley v. Fisher,* 13 Wall. 335, 20 L.Ed. 646 (1872). The Court held that judges

"are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject matter is invested by law

in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgment may depend." 13 Wall. at 352.

In the instant case, Shirer possessed certain contempt power under S.C.Code § 43–134, which states:

"Every magistrate shall have power to enforce the observance of decorum in his court while holding the same and for that purpose he may punish any person who shall, in the presence of the court, offer an insult to the magistrate or a juror or who shall be wilfully guilty of an undue disturbance of the proceedings before the magistrate while sitting officially, as for contempt, by fine and imprisonment, either or both, not exceeding twenty dollars fine and twelve hours imprisonment."

The contempt power under the South Carolina statute is thus limited to instances where the contempt is committed in the presence of the court, or where the party is wilfully guilty of an undue disturbance of the proceedings before the magistrate while sitting officially. As Shirer had the power to impose a contempt sanction, he performed a "judicial act" under *Bradley.*

However, *Bradley* places a further restriction on the application of judicial immunity. Not only must a judge, to be judicially immune, perform a "judicial act," he must also perform it in relation to some proceeding over which there is not a "clear absence of jurisdiction over the subject-matter."

In *Mullins v. Oakley,* 437 F.2d 1217 (4th Cir. 1971), we affirmed a ruling of judicial immunity in a similar action. There, the defendant judge had directed the bailiff to bring the plaintiff to the judge's chambers during an intermission in the trial. The

---

**3.** Further proceedings against Wactor were stayed by consent pending the resolution of this appeal.

judge addressed the plaintiff in offensive language, described by this court as "vile and slanderous," as a result of his belief that the plaintiff was involved in an attempt to improperly influence the jurors sitting in the case. Not only were the judge's acts clearly "judicial act[s]," but they concerned proceedings over which the judge clearly had subject-matter jurisdiction. We stated in *Mullins* that the "law has been settled for centuries that a judge may not be attacked for exercising his judicial authority, even if done improperly." 437 F.2d at 1218.

While in this case the statements were made outside the courtroom, immediately after trial, and while the court was not in session, we nevertheless hold that the defendant is protected by judicial immunity. Under S.C.Code §§ 43–142 and 43–143, Shirer retained subject-matter jurisdiction over the criminal action for a five-day period following judgment, in which period a new trial could be ordered. As the acts about which Dean complains occurred within this period, there is not a "clear absence of jurisdiction over the subject-matter."

However abhorrent we view Shirer's words and actions as alleged, we are of opinion that Shirer performed a "judicial act" in relation to matters over which there was not "a clear absence of subject-matter jurisdiction," and that he is thus clothed with judicial immunity.

Dean has argued that Shirer acted entirely in a non-judicial capacity.[4] He asserts as important the fact that the courtroom also served as the mayor's office. Nothing indicates that Shirer's detention of Dean after Wactor brought Dean back was done in any capacity other than that of a judge. Dean's remark to the crowd was directed to the quality of justice obtainable in the municipal court; it was precipitated by the judgment in the trial immediately prior in which Dean had participated; it was addressed to

someone who was concerned about the outcome of the trial; it was derogatory of the court and meant so to be. Plaintiff has suggested nothing that could be inferred to mean that in detaining Dean against his will, Shirer acted in his capacity as mayor, instead of that as judge. The same applies to the language used, however intemperate and offensive it may have been.

### III

We do not reach the venue questions raised by the plaintiff because it is unnecessary to our decision.

The judgment of the district court is accordingly affirmed, and the case remanded for action not inconsistent with this opinion.

*AFFIRMED AND REMANDED.*

---

4. For the purpose of this case, decided on summary judgment, we must assume that Shirer acted under color of state law. See 42 U.S.C. § 1983. If it were clear, as Dean argues, that Shirer did not act in a judicial capacity, then serious problems would arise as to whether a

cause of action were shown, for there is nothing to indicate Shirer acted in his capacity as mayor, or in any other official capacity than as a judge, so as to place him under color of state law to justify a complaint under 42 U.S.C. § 1983.