406 S.E.2d 678

**William B. CAREY, Respondent Below,**

v.

**Pierre E. DOSTERT, Defendant Below.**

**No. 19714.**

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 16, 1990.

Filed May 24, 1991.

Rehearing Denied July 30, 1991.

**248**

William B. Carey, pro se.

David P. Cleek, Cleek, Pullin & Bibb, Charleston, for defendant.

O'HANLON, Acting Justice:[1]

This matter is before the Court to answer the certified questions posed by the Circuit Court of Morgan County. The questions certified by the lower court[2] are as follows:

1. Is a circuit court judge entitled to judicial immunity for issuing an order to show cause dated December 7, 1981, against a practicing attorney under W.Va.Code § 30–2–7 (1931), knowing

that the statute was obsolete and superseded by W.Va.Code § 51–1–4a (1945), Bylaws of the West Virginia State Bar, and the Judicial Reorganization Amendment to the West Virginia Constitution, Article VIII?

2. Is a circuit court judge entitled to judicial immunity for issuing an order to show cause dated December 7, 1981, against a practicing attorney under W.Va.Code § 30–2–7, when the judge should have known that the statute was obsolete and superseded by W.Va.Code § 51–1–4a, the Bylaws of the West Virginia State Bar, and the Judicial Reorganization Amendment to the West Virginia Constitution, Article VIII?

3. Is a circuit court judge entitled to judicial immunity for issuing an order to show cause dated December 7, 1981, against a practicing attorney under W.Va.Code § 30–2–7, when the statute was subsequently found to be obsolete and superseded by W.Va.Code § 51–1–4a, Bylaws of the West Virginia State Bar, and the Judicial Reorganization Amendment to the West Virginia Constitution, Article VIII?

4. Does a circuit court judge waive protection of the judicial immunity defense by providing a newspaper reporter with a copy of the aforesaid order to show cause, prior to its filing with the clerk of the circuit court, the contents of which were the basis of a newspaper article which was published on the date the order was filed?

5. Is alleged injury to an attorney's reputation a property or liberty interest protected by fourteenth amendment to the United States Constitution?

The lower court implicitly answered all the above questions in the affirmative when it denied the petitioner's motions for summary judgment by its order entered on December 12, 1989. Upon review of the

---

1. With four of the Justices having deemed themselves disqualified, Acting Chief Justice Margaret L. Workman designated Circuit Judges Robert Burnside, Thomas Keadle, Daniel P. O'Hanlon and Booker Stephens as Acting Justices.

2. Regarding these certified questions, it should be noted from the outset that both parties now agree that Questions 1, 2 and 3 are so inextricably intertwined that they will be addressed together.

arguments of the parties and all the matters of record submitted before the Court, we disagree.

On or about December 1, 1981, the petitioner, Judge Pierre Dostert, then Judge of the Twenty-third Judicial Circuit, received a written communication from Syvilla Hovermale, a client of respondent, William B. Carey, a licensed practicing attorney in Morgan County, complaining about the proposed settlement of a wrongful death case prosecuted by the respondent on behalf of Mrs. Hovermale.

Mrs. Hovermale set forth the nature of her contingency contract with Carey and charged that he had refused to consummate the settlement. On December 7, 1981, petitioner issued an order to show cause against the respondent directing him to appear before the court. The petitioner's order referred to his concern with the respondent's fifty percent contingency fee contract with Mrs. Hovermale.[3] On December 9, 1981, Frank Brill, a newspaper reporter, was visiting the office of Judge Dostert and was supplied with a copy of the order by either the petitioner, his secretary, or his clerk.[4] An article written solely from the contents of the order to show cause was published December 10, 1981, in The Evening Journal, a newspaper of general circulation published in Martinsburg. The order to show cause was filed with the clerk of the court on December 10, 1981.

On the same date, the petitioner issued a second order in which he recused himself from hearing the matter.

The respondent obtained a writ of prohibition against the petitioner in this Court, wherein we held that W.Va.Code § 30–2–7 (1931),[5] the statute under which the judge had acted, had been superseded by W.Va. Code § 51–1–4a, the Bylaws of the West Virginia State Bar, and the Judicial Reorganization Amendment to the West Virginia Constitution, Article VIII, and was consequently invalid. Syl. Pt. 2, *Carey v. Dostert*, 170 W.Va. 334, 294 S.E.2d 137 (1982) (hereinafter referred to as *Carey I*).

On December 1, 1982, the respondent filed a civil action against the petitioner in the Circuit Court of Morgan County, seeking damages for libel, slander, malicious prosecution, abuse of process, negligence, intentional infliction of emotional distress, and violation of civil rights under 42 U.S.C.A. § 1983 (West 1981). The essence of the respondent's action was that his professional reputation had been damaged as a result of the petitioner's order to show cause and the resulting news article.

This Court, on February 1, 1983, temporarily assigned the Honorable Dan C. Robinson, Judge of the Sixth Judicial Circuit, to the Twenty-third Judicial Circuit to preside over the case below. On December 12, 1989, the trial court denied in part the petitioner's motion to dismiss and/or mo-

---

**3.** The judge's order provided, in pertinent part, that:

> 13. From the foregoing facts, it would appear to the Court as an ultimate fact, that plaintiff's attorney has, in violation of the Code of Professional Responsibility 1) acquired a proprietary interest in the subject litigation and, 2) contracted with a client for a contingent fee far in excess of what is customarily regarded as a reasonable contigent [sic] fee in a Civil Case, all in violation of the Code of Professional Responsibility, Section DR 5–103(A). This, in particular, appears to be amply demonstrated by the fact that the attorney refuses to release, to the Executrix of the Estate of Charles Watson Hovermale, any of the monies which she claims is due the Estate of Charles Watson Hovermale unless and until she agrees to pay, from the Estate ... the sum of Three Thousand, Three Hundred, Seventy Dollars and Forty–One Cents ($3,370.41).
>
> The Court is of the threshold opinion that a fifty percent (50%) contigent [sic] fee is sub-

stantially in excess of that customarily charged by the legal profession in the State of West Virginia and in the Eastern Panhandle of West Virginia, and in Morgan County, West Virginia....

**4.** It is unclear from the record which of these individuals actually gave the order to the reporter.

**5.** W.Va.Code § 30–2–7 provided in pertinent part that:

> If the supreme court of appeals or any court of record of this State, except the county court, observe any malpractice therein by any attorney, or if complaint, verified by affidavit, be made to any such court of malpractice by any attorney therein, such court shall order the attorney to be summoned to show cause why his license shall not be suspended or annulled....

tion for summary judgment grounded on judicial immunity, denied petitioner's motion for a partial summary judgment as to the civil rights claim, dismissed count two of the complaint [slander] and dismissed the respondent's claims for economic damages. By order of February 12, 1990, the trial court directed that certain questions of law be certified to this Court.

### Certified Questions Numbered 1, 2 and 3

The first three certified questions call upon us to determine whether the petitioner enjoyed judicial immunity if he 1) knew, 2) should have known, or 3) subsequently learned that the statute was obsolete. The petitioner argues that immunity exists and is applicable in all these situations, since all acts taken by the petitioner were judicial acts made within his actual or apparent jurisdiction. The respondent, however, argues that the petitioner judge was not performing a judicial act to which immunity would attach.

It is critical to the independence of the judiciary that judicial officers be free to exercise their authority without fear of personal liability for their actions. Historically, courts have recognized this as the doctrine of judicial immunity, and it is "as old as the law" as recognized by the United States Supreme Court in *Randall v. Brigham*, 74 U.S. (7 Wall.) 523, 536, 19 L.Ed. 285 (1868).[6] Because it is a judge's duty to decide all cases within his jurisdiction, and because his decisions may arouse intense feelings, particularly in hotly-contested cases, fearless and independent judicial decision-making should not be intimidated by potential litigation from dissatisfied litigants. *See Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967).

The doctrine of judicial immunity as enunciated by the United States Supreme Court is sweeping in its scope. In *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed.

646 (1871) the United States Supreme Court recognized that judicial immunity applied to preclude liability however erroneous or injurious the judge's action may have been, or indeed whatever the judge's motive in taking such action may have been, so long as it was a judicial act. *Id.* at 347. Moreover, this Court in *Pritchard v. Crouser*, 175 W.Va. 310, 332 S.E.2d 611 (1985) concurred with the three major policy grounds identified by the United States Supreme Court for shielding judges from liability, which included: "(1) the preservation of judicial independence; (2) the need for finality in lawsuits; and, (3) the existence of another remedy against judicial excess in the form of appellate review." 175 W.Va. at 314, 332 S.E.2d at 615.

In *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) the United States Supreme Court reiterated this doctrine despite circumstances indicating a rather aggravated lack of due process. In that case, the circuit judge approved a petition filed by the mother of a " 'somewhat retarded' " girl to have the girl sterilized. *Id.* at 351, 98 S.Ct. at 1102. The approval of the petition came the same day it was filed after an ex parte proceeding without a hearing and without notice to either the girl or her guardian ad litem. *Id.* at 351–54, 360, 98 S.Ct. at 1101–04, 1106. The Court in *Stump* went so far as to hold that a judge would not be deprived of immunity even if the action were malicious or beyond his authority. *Id.* at 356, 98 S.Ct. at 1104. The Court made it clear that the judge would only be subjected to liability "when he has acted in the 'clear absence of all jurisdiction.' " *Id.* at 356–57, 98 S.Ct. at 1105 (quoting *Bradley*, 80 U.S. (13 Wall.) at 351).

Courts have reasoned that it is necessary to imbue the doctrine of judicial immunity with such broad scope in order to preserve the integrity of the judicial system. As the Court stated in *Stump*, disagreement with the action taken by the judge does not justify a deprivation of immunity. 435 U.S.

---

**6.** The Supreme Court stated that "it is a general principle applicable to all judicial officers, that they are not liable to a civil action for any judicial act done within their jurisdiction."

*Randall*, 74 U.S. (7 Wall.) at 535; *see Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871).

at 363, 98 S.Ct. at 1108. Even if this doctrine may in some circumstances create unfairness to litigants, it is necessary in order to ensure that judges render decisions without fear of personal consequences. *Id.*

This Court has also recognized broad judicial immunity against civil liability. *See Crouser*, 175 W.Va. at 310, 332 S.E.2d 611. In *Crouser*, this Court was asked to determine the scope of judicial immunity in light of W.Va.Code §§ 50–4–7 (1978) and 53–1–8 (1933).[7] At issue was whether Magistrate Crouser had wrongfully refused to transfer the Pritchards' case after they filed an affidavit stating that the magistrate was prejudiced against them. 175 W.Va. at 311, 332 S.E.2d at 612.

The Pritchards applied to the circuit court for a writ of prohibition against the magistrate and for costs arising from the action. Even though the underlying action involving the Pritchards was settled with the opposing party, thereby causing the Pritchards to request that the petition for a writ of prohibition be dismissed, the Pritchards maintained their claim to court costs. *Id.*, 175 W.Va. at 311–12, 332 S.E.2d at 612–13. The circuit court awarded those costs to the Pritchards, finding the magistrate's " 'arbitrary' refusal to transfer the Pritchards' case made him liable for an award of costs." *Id.*, 175 W.Va. at 312, 332 S.E.2d at 613.

This Court upon review of the *Crouser* case reached a different conclusion. First, we concluded that the magistrate had acted appropriately in refusing to remove himself from the case in light of the fact that the Pritchards had filed multiple affidavits against three of the four magistrates within in the county. *Id.*, 175 W.Va. at 311–13, 332 S.E.2d at 612–14. Further, in address-

ing the circuit court's award of costs to the Pritchards, we found that the statute allowing for the award of costs has never been utilized against a judicial officer in a proceeding involving a writ of prohibition. *Id.*, 175 W.Va. at 317, 332 S.E.2d at 618. Moreover, we indicated that the statutory provision "does not surreptitiously displace common law judicial immunity." *Id.*

Additionally, this Court in *Crouser* stated "[a] judge without immunity is a judge without power." *Id.*, 175 W.Va. at 314, 332 S.E.2d at 615. We also emphasized that immunity is required to prevent the chilling effect that even the threat of litigation would have on judges in the performance of their duties. *Id.*, 175 W.Va. at 315, 332 S.E.2d at 616. Finally, this Court in *Crouser* refused to grant attorney's fees against a judge although the United States Supreme Court had allowed similar fees in *Pulliam v. Allen*, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984).[8] *Crouser*, 175 W.Va. at 316–18, 332 S.E.2d at 617–19. Consequently, this Court's finding in *Crouser* that "[j]udicial immunity in West Virginia is absolute" indicates that we have given a broader interpretation to judicial immunity then found in many other jurisdictions. *Id.*, 175 W.Va. at 318, 332 S.E.2d at 619.

▋ In short, judges are absolutely immune from civil liability for damages for actions taken in the exercise of their judicial duties. *See Stump*, 435 U.S. 349, 355–56, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331; *see also Emswiler v. McCoy*, 622 F.Supp. 786 (S.D.W.Va.1985); *Cogar v. Strickler*, 570 F.Supp. 34 (S.D.W.Va.1983). Furthermore, a judge may act within his jurisdiction even when he acts outside his authority. *Crouser*, 175 W.Va. at 313, 332 S.E.2d at 614 (citing *Stump*, 435 U.S. 349, 356–7,

---

7. These respective statutory provisions essentially provide in pertinent part: 1) for a litigant to transfer his case to a different magistrate upon filing an affidavit stating that the magistrate before which the case is pending is personally biased or prejudiced against the litigant; and 2) for an award of costs against a judicial officer in mandamus proceedings as the court may determine. *See* W.Va.Code §§ 50–4–7 and 53–1–8.

8. In *Pulliam*, an action was brought under 42 U.S.C. § 1983 against a magistrate, claiming that her practice of imposing bail on people arrested for nonjailable offenses and of incar-

cerating those individuals who could not afford the bail set was unconstitutional. 466 U.S. at 524–25, 104 S.Ct. at 1972. The United States Supreme Court agreed not only with the lower court's decision to enjoin the practice, but also with that court's rejection of the magistrate's claim that an award of attorney's fees against her was barred by virtue of judicial immunity. *Id.* It is important to note, however, that this abrogation of judicial immunity occurred only in response to a clear and unambiguous federal statutory command to award fees. *Id.* at 543–44, 104 S.Ct. at 1981–82; *see* 42 U.S.C.A. § 1988 (West 1981); *see also Crouser*, 175 W.Va. at 314, 332 S.E.2d at 614–15.

98 S.Ct. 1099, 1104–05). "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362, 98 S.Ct. at 1107.

■ In this case, the Hovermale complaint was directed to Judge Dostert in his judicial capacity. The issuance of the show cause order in connection therewith clearly was also done in the judge's judicial capacity. The fact that respondent thereafter sought and was granted a writ of prohibition against the judge further substantiates that the issuance of the show cause order was judicial in nature, since only judicial acts can be prohibited by a writ of prohibition. *See Carey*, 170 W.Va. 334, 294 S.E.2d 137; *see also State ex rel. Collier v. County Court of Mingo County*, 97 W.Va. 615, 618, 125 S.E. 576, 577 (1924); 15 Michie's Jurisprudence, *Prohibition*, § 2 (1979 & Supp.1990). Therefore, in this case, there is no question that all the acts taken were judicial in nature.

■ Furthermore, the scope of a circuit judge's jurisdiction is broad-based. In West Virginia, a circuit court is one of general jurisdiction. W.Va. Const. art. VIII, § 6; W.Va.Code § 51–2–2 (1978). In addition, the petitioner's December 7, 1981, order was premised upon statutory authority. Although this Court held in *Carey I* that it had the inherent power to regulate licenses to practice law, there had been no clear ruling at the time of the defendant's show cause order that W.Va.Code § 30–2–7 was not a viable and enforceable statute. *See* Syl. Pt. 1, 170 W.Va. 334, 294 S.E.2d 137. Furthermore, the statute itself can be distinguished from the common law power of courts of general jurisdiction to disbar errant attorneys. *State v. Shumate*, 48 W.Va. 359, 361, 37 S.E. 618 (1900). Although the conflict between that statute and Article VIII of the West Virginia Constitution, W.Va.Code § 51–1–4a, and the Bylaws of the West Virginia State Bar was resolved by this Court in *Carey I*, the fact that W.Va.Code § 30–2–7 was subsequently found to be obsolete in no way indicates that the defendant acted in a "clear absence of jurisdiction." [9]

■ The fact that a judge acts upon a void or invalid law does not deprive him of immunity if he otherwise has jurisdiction. In *Robinson v. McCorkle*, 462 F.2d 111 (3d Cir.), *cert. denied*, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972), a judge had ordered the plaintiff committed under a repealed New Jersey summary commitment statute. Such a misapprehension of law, according to the court of appeals, did not remove the shield of immunity. *Robinson*, 462 F.2d at 112–13. In *McDaniel v. Harrell*, 81 Fla. 66, 87 So. 631 (1921), a damage award against a judge was set aside on immunity grounds, even though the judge had incarcerated the plaintiff under a statute later found to be unconstitutional. 87 So. at 633–34.

■ Finally, the respondent makes much of the fact that Judge Dostert is covered by a general policy of insurance purchased by the State of West Virginia to cover all its employees, contending that the existence of such coverage along with the language of the policy constitutes a waiver of the right to assert judicial immunity as a defense in this action.

While we do not reach the issue of the effect of this type of policy on the general doctrine of sovereign immunity,[10] we do

---

9. *See* present Canon 3 B(3) of the Judicial Code of Ethics (1976) which provides that "[a] judge should take or initiate appropriate disciplinary measures against a judge or lawyer for unprofessional conduct of which the judge may become aware." *See also* Rule 8.3(a) of the Rules of Professional Conduct, as amended.

10. *But see* Syl. Pt. 2, *Pittsburgh Elevator Co. v. West Virginia Bd. of Regents*, 172 W.Va. 743, 310 S.E.2d 675 (1983) where we, in interpreting W.Va.Code § 29–12–5 (1957) as it relates to state agencies being immune from suit under W.Va. Const. art. VI, § 35, held that "[s]uits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the State's liability insurance coverage, fall outside the traditional constitutional bar to suits against the State." *See also* W.Va.Code § 29–12–5(a) (1986) which authorizes the State Board of Insurance to procure liability insur-

here specifically hold that it has no effect whatsoever on the doctrine of judicial immunity in this jurisdiction. It would not be consonant with a doctrine which is meant to foster judicial independence to allow judges to be sued, but merely spared from any personal liability above the limits of an insurance policy.

Therefore, we hold that judges in this jurisdiction are absolutely immune from suit for the results of any judicial act performed by them while acting in their official capacity.[11] Thus, we answer certified questions numbered 1, 2 and 3 in the affirmative.

### Certified Question #4

This certified question presents the issue of whether a judge who provides a copy of a court order to a newspaper reporter prior to the filing of such court order with the clerk of the court waives the protection of judicial immunity. The petitioner submits that the publication or dissemination of a court order does not abrogate judicial immunity since the execution of a court order constituted a judicial act with immunity attaching to any matters connected with the contents of the order. Any subsequent publication of the order, petitioner argues, is privileged and falls within the confines of judicial immunity. The respondent, on the other hand, argues that the petitioner's publication of the order was an administrative, rather than judicial act, and deprived him of an initial period of confidentiality during which a totally unmeritorious ethical accusation could be investigated and dismissed. Thus, respondent asserts the petitioner disseminated privileged material in a nonprivileged manner, thereby losing any judicial immunity defense.

ance on behalf of the State and provides in pertinent part that:

Any policy of insurance purchased or contracted for by the board shall provide that the insurer shall be barred and estopped from relying upon the constitutional immunity of the state of West Virginia against claims or suits: *Provided, That nothing herein shall bar the insurer of political subdivisions from relying upon any statutory immunity granted such political subdivisions against claims or suits.* (emphasis supplied)

■ Since the signing of the show cause order was a judicial act, causing judicial immunity to attach to the contents of the order, the subsequent publication of the order was privileged and an absolute defense to a libel or defamation charge. The United States Supreme Court in *Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988), examined this issue in a different context and enunciated a functional approach to the analysis of when immunity of judicial officials must be utilized. *Id.* at 227, 108 S.Ct. at 544.

In *Forrester,* the issue was whether a state court judge was entitled to absolute immunity from suit for damages brought pursuant to 42 U.S.C. § 1983. 484 U.S. at 220–21, 108 S.Ct. at 540–41. The case was brought by a probation officer who claimed she had been demoted and ultimately dismissed by the judge on the basis of sex discrimination. *Id.*

The Court questioned whether the actions performed by the judge were in fact judicial acts which would have entitled him to absolute immunity. *Id.* at 226–27, 108 S.Ct. at 543–44. Particularly the *Forrester* Court reflected that

[d]ifficulties have arisen primarily in attempting to draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges. Here, as in other contexts, immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches.

*Id.* at 227, 108 S.Ct. at 544.

The Supreme Court expanded further on the application of this functional approach to the immunity issue by stating that

It is noted that the emphasized portion of W.Va. Code § 29–12–5 occurred as a result of the 1986 amendment and was not the subject of the appeal in *Pittsburgh Elevator Co.*

11. While this grant of judicial immunity is both absolute and broad, the avenues provided by the Code of Judicial Ethics and, indeed, the electoral process remain for dealing with judicial misconduct in office. It is clear, therefore, that while a judge cannot be held civilly liable in this jurisdiction for judicial acts done in his official capacity, other remedies exist.

[u]nder th[is] approach, we examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and we seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions. Officials who seek exemption from personal liability have the burden of showing that such an exemption is justified by overriding considerations of public policy, and the Court has recognized a category of 'qualified' immunity that avoids unnecessarily extending the scope of the traditional concept of absolute immunity.

*Id.* at 224, 108 S.Ct. at 542.

Based upon the application of this functional approach, the *Forrester* court concluded that the judge was not entitled to absolute immunity for his decision to demote and discharge the probation officer because the function performed by the judge was clearly administrative rather than judicial in nature. *Id.* at 229–30, 108 S.Ct. at 545.[12]

■ We agree that such a functional approach is useful in determining whether a particular act is judicial in nature.[13] Furthermore, the parameters of the functions performed by a judicial officer must be considered in view of state laws. Here the provisions of W.Va.Code § 30–2–7 extended judicial acts to include the institution of ethical proceedings by the circuit court. Therefore, absolute immunity applies even as to injunctive relief and attorney's fees. *Crouser,* 175 W.Va. at 316–17, 332 S.E.2d at 617–18. We believe that the United States Supreme Court's holding in *Pulliam* regarding injunctive relief and attorney's fees has no application here. 466 U.S. at 543–44, 104 S.Ct. at 1981–82. It is clear though that the defendant's show cause order, even though not yet filed with the clerk of the court at the time a copy was obtained by the newspaper reporter, still was the manifestation of a judicial act.

*Stump,* 435 U.S. at 360–63, 98 S.Ct. at 1106–08; *see generally State v. Mason,* 157 W.Va. 923, 205 S.E.2d 819 (1974); *Humphrey v. Mauzy,* 155 W.Va. 89, 181 S.E.2d 329 (1971).

Since issuance of a show cause order is a judicial act, the petitioner cannot be sued for libel or defamation because of the publication of the contents of the order. *Fletcher v. Bryan,* 175 F.2d 716, 717–18, (4th Cir.1949). In *Fletcher,* a judge was held to have absolute immunity in an action for libel and insulting words against him for language in a show cause order seeking to have the plaintiff attorney held in contempt for violating a disbarment order. *Id.* at 717. The Fourth Circuit Court of Appeals found that the doctrine of judicial immunity precluded liability. *Id.* at 717–18. Moreover, a judge performing his judicial function is absolutely privileged to publish defamatory matters in the performance of that function if the publication has some relation to the matter before him.

■ Finally, the fact that the alleged defamatory statements were made outside of a courtroom is in no way dispositive in determining whether or not they are cloaked with immunity. In *Kraushaar v. Lavin,* 39 N.Y.S.2d 880 (1943) the court held that, despite the facts that the statements in question were made outside of the courtroom, they were still part of the judicial function and therefore immune from liability.

■ Thus this Court holds that a judge acting in his judicial capacity who provides the public with information contained in the public record, whether through the press or otherwise, or distributes copies of pleadings or other official court documents which are a part of the public record does not thereby give up the protection of judicial immunity. In short, there is no cause of action against a judge for the publication of an order that is part of a public record and is the manifestation of a judicial act. We therefore answer this question in the negative.

12. The Court in *Forrester,* however, left the door open on whether judges can claim a qualified immunity on some administrative acts. 484 U.S. at 230, 108 S.Ct. at 545–46.

13. *See Paxton v. Crabtree,* 184 W.Va. 237, 250, 400 S.E.2d 245, 258–59 (1990).

*Certified Question #5*

The final question involves an interpretation of the federal civil rights statute found in 42 U.S.C.A. § 1983 (West 1981).[14] The petitioner asserts that injury to reputation is not an interest protected by the fourteenth amendment to the United States Constitution and therefore respondent fails to state a claim under 42 U.S.C.A. § 1983. The respondent argues that although the right to a good reputation might be found to be too vague, where injury to a person's reputation demonstrably damages that person's right to earn a living, a protectable interest pursuant to the fourteenth amendment should be found to exist.

Respondent seeks damages for injury to his professional reputation in the community as a result of the issuance and publication of the show cause order under 42 U.S.C.A. § 1983, which he alleged to be defamatory. That statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.

*Id.*

The United States Supreme Court has held that defamation does not constitute a deprivation of a "liberty" or "property" interest protected by the fourteenth amendment. *Paul v. Davis*, 424 U.S. 693, 712, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976); *Dean v. Shirer*, 547 F.2d 227, 229 (4th Cir., 1976) (citing *Paul*, 424 U.S. 693, 96 S.Ct. 1155). In *Paul*, the petitioner, who had been arrested but not convicted for shoplifting, had his name and picture published by police officials in a flyer of "active shoplifters" distributed to merchants. 424 U.S. at 694–95, 96 S.Ct. at 1157. The peti-

tioner sued under 42 U.S.C. § 1983, contending that the respondents' defamation had deprived him of liberty and violated his right of privacy. *Paul*, 424 U.S. at 697 and 712, 96 S.Ct. at 1158 and 1166. In dismissing the claim, the Supreme Court held that the petitioner's reputation was not an interest protected by the fourteenth amendment and that a charge of defamation therefore was insufficient to state a cause of action under 42 U.S.C. § 1983. 424 U.S. at 712, 96 S.Ct. at 1166.

The case of *Dean* followed the Supreme Court's decision in *Paul*. In *Dean*, a municipal court judge was sued under 42 U.S.C. § 1983 by an attorney who claimed that he was defamed by the judge for subjecting him to humiliating and embarrassing threats and epithets outside the courtroom following a court proceeding. 547 F.2d at 228. Like the respondent in the case now before us, Dean claimed that his ability to practice his profession and express his views had been inhibited and that he was embarrassed and humiliated. *Id.* The court held that the judge was clothed with judicial immunity and ruled that Shirer's defamation was not actionable under 42 U.S.C. § 1983. *Dean*, 547 F.2d at 229–31. It should be noted that, as here, some of the acts of which the petitioner complained took place outside of the courtroom, but were still held to be covered by judicial immunity.

The petitioner in this case contends that the respondent claimed damages involving respondent's reputation in the community and, therefore, no "liberty" or "property" interest is created to invoke due process protection thereby giving rise to a cause of action under 42 U.S.C.A. § 1983. *See Geter v. Fortenberry*, 849 F.2d 1550, 1556 (5th Cir.1988). A property interest must be more than a person's unilateral expectation. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Further, petitioner argues that since the essence of the respondent's claim is that he was defamed, either by the issuance of the show

---

**14.** The United States Supreme Court has held that 42 U.S.C.A. § 1983 has not abolished judi-

cial immunity. *See Pierson*, 386 U.S. at 554–55, 87 S.Ct. at 1218.

cause order or its subsequent publication, a cause of action is not stated under 42 U.S.C.A. § 1983. The respondent's argument that the confidentiality requirements of the Bylaws of the West Virginia State Bar somehow elevates his reputation to a property or liberty interest is simply wrong. Thus, our answer to certified question number 5 is in the negative.

This case is remanded to the Circuit Court of Morgan County with instructions to grant petitioner's motion to dismiss the complaint on the grounds of judicial immunity. Having answered the certified questions, this case is dismissed from the docket of this Court.

Certified questions answered.